JAMES T. BRAXTON, as Administrator, etc., of EUGENE BRAXTON, Deceased, Respondent, *v.* BENJAMIN S. MENDELSON, Appellant.

First Department, January 16, 1920.

Motor vehicles — negligence — death caused by motor truck — evidence raising questions for jury — lease of truck by day under yearly contract — when lessor not liable for negligence of chauffeur receiving orders from lessee — new trial — failure of defendant to offer written lease in evidence — trial — bankruptcy of lessee.

Action to recover for the death of the plaintiff's intestate who was run over and killed by a motor truck. Evidence examined, and *held*, that the question of the negligence of the chauffeur who was driving the truck and the intestate's freedom from negligence were properly questions of fact for the jury and that a verdict for the plaintiff was warranted by the evidence.

However, where it appeared that although the defendant was the owner of the truck and employed and paid the chauffeur, the truck at the time of the accident and for some time prior thereto had been leased to another person under a yearly contract for the daily delivery of goods and that the chauffeur took his orders from the lessee; that he became a member of a labor union on the advice of an employee of the lessee and that he received no orders from the lessor and worked entirely in the business of the lessee,

except when he occasionally received authority to have repairs made, a finding that the chauffeur was the servant of the lessor at the time of the accident is against the evidence.

Under the circumstances the court would dismiss the complaint if it were not for the fact that the defendant, when called as a witness, did not produce or offer in evidence the contract between himself and the lessee which would have rendered any uncertainty as to their exact relationship impossible instead of relying upon oral evidence. For this reason the court will order a new trial instead of dismissing the complaint.

In any event the judgment against the defendant will be reversed where the plaintiff was allowed to bring before the jury the fact that the lessee had become bankrupt.

APPEAL by the defendant, Benjamin S. Mendelson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of February, 1919, upon the verdict of a jury for $2,500, and also from an order entered in said clerk's office on the 17th day of February, 1919, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*William Dike Reed* [*William B. Shelton* with him on the brief], for the appellant.

*George B. Class* [*John L. Class* with him on the brief], for the respondent.

DOWLING, J.:

This action was brought to recover damages for the death of plaintiff's intestate, who was run over by a motor truck on October 3, 1917, in Lenox avenue near One Hundred and Thirty-fifth street, in the city of New York. There was a fair question of fact for the jury both as to the negligence of the chauffeur who was driving the truck and as to the intestate's freedom from contributory negligence, and the verdict resolving both these questions in favor of plaintiff was warranted by the evidence.

The main question involved in this appeal, however, is whether the chauffeur at the time of the accident was the servant and under the control of the defendant, or whether he was at the time the servant of another party. The defendant rested at the close of plaintiff's case, and the testimony about to be referred to was, therefore, all given by witnesses

produced by plaintiff. From their evidence it appears that defendant is in the trucking business. He had a yearly contract with the Mutual McDermott Dairy Company by which he furnished trucks owned by him to work for the day for the dairy company, which took full charge of them. They ran between the company's branches or stations. Defendant hired the chauffeur in charge of this truck (Harvey) and told him to take his orders from the dairy company. Defendant knew that his trucks were to do all the work that was necessary for the dairy company. This particular truck was used on the route between the company's stations in Manhattan street and One Hundred and Seventy-fifth street. The chauffeur Harvey testified that he was hired by defendant to work for him originally in the latter's general business, and then was assigned by defendant to work for the dairy company. He returned to defendant's general employ for a while, and was again assigned to work for the dairy company. When first assigned to work there he was instructed by defendant to take his truck up to the dairy company's plant and follow their orders. Harvey accordingly took his truck up to the plant and received his orders thereafter from the night foreman of the dairy company. The truck was always taken out every evening from the dairy company's plant in Manhattan street in delivering milk and returned to the same place by him every night when his work was over. When he first went to work with the truck, having been hired by defendant, Harvey was told by the night foreman of the dairy company that it was necessary for him to become a member of the Milk Drivers' Union, and pursuant to such instructions he joined the union, which occasioned his receiving increased wages, which were paid to him by defendant. Harvey testifies that he never received orders from any one except from the dairy company; that the only time he had any dealings with defendant, outside of receiving his wages, was to call him up if any repair work was required on the truck and get his consent to its being done. On the night of the accident, Harvey was driving a truck which belonged to defendant and bore his name, as well as the permit issued by the board of health in the name of the dairy company. The truck was loaded with cans of milk belonging to the dairy company

and was in process of transportation from its Manhattan street branch to its One Hundred and Seventy-fifth street branch, pursuant to the orders of the night foreman of the dairy company. It thus appears that, while the truck belonged to defendant, who paid the wages of the chauffeur, the chauffeur was subject to the instructions and orders of the dairy company. He was engaged solely in its business, he did no work in defendant's general business, and was free from any directions, supervision or control from him. His sole connection with defendant was to receive his wages and receive authority to have repairs made. His services were contracted to the dairy company by defendant with the exclusive use of the truck. The truck itself was used only in the dairy company's business. It was continuously in its possession and under its sole control, save when it was being repaired at defendant's expense. When the accident took place, the truck was actually and exclusively engaged in the dairy company's business. Under these conditions the rules laid down in *McNamara* v. *Leipzig* (227 N. Y. 291) become applicable. Here, the work being performed was that of the dairy company, to which the services of defendant's chauffeur had been let, with the sole use of the truck, and the chauffeur was doing the work of the dairy company, under its exclusive control, and, therefore, for the occasion and time was the servant of the dairy company. It follows that the implied finding of the jury that the chauffeur was the servant of defendant is without evidence to support it. We should not hesitate in following this decision to its logical conclusion and dismissing the complaint, were it not that the defendant, when called as a witness, did not see fit to produce and offer in evidence the contract between himself and the dairy company, which would have rendered any uncertainty as to their exact relationship impossible. Such contract might have contained clauses materially different from the oral evidence. It was defendant's duty to produce it, to resolve any doubt which might exist. Hence, instead of dismissing the complaint, the judgment appealed from will be reversed and a new trial ordered, with costs to appellant to abide the event.

Had a different conclusion been reached as to defendant's liability, it would still have been necessary to reverse the

judgment because of the interjection into the case of the alleged bankruptcy of the dairy company. The chauffeur was asked if that company was in bankruptcy when he was working for it and, over objection, answered: " They were not to my knowledge." Thereafter plaintiff's counsel took the stand as a witness, and the following testimony was given: " Direct examination: By Mr. Class: Q. What efforts, if any, have you made to procure the presence in court of any officer or foreman of the Mutual McDermott Dairy Corporation? A. Immediately after leaving court yesterday I went to the telephone and found a record there reading — Mr. Reed: I object to any record he found in the telephone book. The Court: He may state what he found in the customary usual telephone book. Mr. Reed: Of today's date? The Court: Of current day. [Exception.] A. The record read ' McDermott Dairy Corporation, trustee in Bankruptcy, 51 Chambers street, telephone Worth 3664.' Upon calling this number — Mr. Reed: I move to strike it out as hearsay. The Court: I will allow the record to stand, but the fact as to whether they were or were not in bankruptcy will not be considered as proven by the fact it says that in the telephone book. [Exception.] A. The Central Office in answer to my attempt to get these parties reported after some delay, the wire was discontinued. Mr. Reed: I object to what was said. The Court: He may show the effort to reach them on the telephone. Mr. Reed: No question. Mr. Class: That is the plaintiff's case."

It is obvious that the sole effect of this testimony was to prejudice the defendant by conveying the intimation that, as the dairy company was bankrupt, the sole chance for recovering any damages for the regrettable death of the young man was by a verdict against the defendant. The receipt of this evidence constituted reversible error.

The judgment and order appealed from will be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., PAGE and PHILBIN, JJ., concur; SMITH, J., concurs on the ground of improper injection into the case of the bankruptcy of the dairy company.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.