FRANK P. CHARLES, as Administrator, etc., of BERNARD CHARLES, Deceased, Respondent, *v.* WILLIAM M. BARRETT, as President of the ADAMS EXPRESS COMPANY, INC., Appellant, Impleaded with CHARLES STEINHAUSER, Defendant.

First Department, June 3, 1921.

Motor vehicles — action to recover for death caused by motor truck — express company hiring truck by hour from owner who cared for truck and selected and paid driver not liable — driver not special servant of express company — owner an independent contractor.

In an action to recover for the death of the plaintiff's intestate who was run over by a motor truck through the negligence of the driver, it appeared that the appellant, an express company, hired the motor truck from its

owner by the hour to cart goods for it from place to place as it directed, but that the owner cared for the truck and selected, employed and controlled the driver, and that the truck was returned to the owner's garage at the close of the day's work, excepting on such days as it was used continuously throughout the twenty-four hours of the day. *Held,* that the driver of the motor truck was not in the employ of the appellant at the time of the accident and, therefore, the appellant was not liable.

Nor can it be said that the driver, a servant in the general employ of the owner of the truck, was, at the time of the accident, a special servant of the appellant, so as to make the latter liable for his negligence.

The owner of the truck was an independent contractor.

APPEAL by the defendant, William M. Barrett, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of November, 1920, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 22d day of November, 1920, denying said defendant's motion for a new trial made upon the minutes.

*Alfred W. Meldon* of counsel [*Joseph Force Crater* with him on the brief], for the appellant.

*Thomas J. O'Neill* of counsel [*Leonard F. Fish* with him on the brief], for the respondent.

MERRELL, J.:

Plaintiff's intestate came to his death on November 7, 1917, on East Twenty-fourth street, in the borough of Manhattan, New York city, as the result of being run over by a three and one-half ton Mack truck, the property of one Charles Steinhauser, and which was being driven at the time by the chauffeur of said Steinhauser, but while said truck was engaged in carrying express for the defendant Adams Express Company, Inc. In the complaint it was alleged that the death of plaintiff's intestate was caused by the negligence of the chauffeur in charge of said truck and at the time of the accident alleged in the complaint to be under the control and command of both of said defendants. Plaintiff's intestate at the time was employed by the department of highways of the city of New York, and was engaged as a laborer in making repairs to the highway at a point a short distance westerly of Avenue

First Department, June, 1921.                    [Vol. 197

A. The evidence shows that the motor truck in question was driven into Twenty-fourth street, and that the chauffeur lost control of the same and, although he endeavored to escape being struck, plaintiff's intestate was run over by the truck, which continued on its uncontrolled career upon the sidewalk, colliding with the buildings upon the street.

The action was originally brought against both Steinhauser and the appellant Adams Express Company, Inc., a voluntary joint stock association consisting of more than seven members, of which William M. Barrett was its president. During the progress of the trial the court granted a nonsuit as to the defendant Steinhauser, and the question of the negligence of the defendant Adams Express Company, Inc., causing the death of plaintiff's intestate was submitted to the jury. The jury returned a verdict in favor of the plaintiff and against the said express company for $2,000 damages, upon which the judgment appealed from was entered. The defendant moved to set aside the verdict and for a new trial upon the usual grounds, which motion was denied, and said defendant has also appealed from the order denying its motion to set aside said verdict and for a new trial.

The first and important question presented upon this appeal is as to whether the defendant was the party responsible for the negligence of the chauffeur, who managed and controlled the truck at the time plaintiff's intestate was killed. Upon the question of the negligence of the chauffeur, the verdict of the jury seems to be amply supported by the evidence. Upon the question as to whether or not the defendant, appellant, is to be held responsible for the negligence of the driver of the car, the evidence very clearly shows that the truck in question was owned at the time by the defendant Steinhauser. At the time of the accident the truck was being used for the purpose of transportation of goods for the defendant express company under a contract between Steinhauser and said company whereby the latter hired of Steinhauser the use of his truck and chauffeur at and for a consideration of two dollars per hour. Steinhauser hired the chauffeur, paid him his wages, and, so far as the evidence shows, remained always his master. Steinhauser paid the expenses of operating the truck, furnished the gasoline used in running it, attended

to the repairs, and furnished the chauffeur to drive it. At the time of the accident there was printed upon the truck, which was a closed van, the name, " Charles Steinhauser, of 211 and 213 East 4th St." Suspended from the rear of the driver's seat on the grating was a card reading, " Adams Express Co." Steinhauser, called by the plaintiff, testified that he owned the truck and hired the driver, one Moses, and paid the driver's salary. Steinhauser testified that he had an arrangement for the truck with the defendant Adams Express Company, Inc.; that he made this arrangement with a Mr. Peterson, who was manager of the transportation department of the defendant, appellant; that the agreement between Steinhauser and the defendant, represented by its manager of transportation, Peterson, was verbal, and was made in September, 1917. Steinhauser testified that under the arrangement he was to furnish the truck and chauffeur to the Adams Express Company, Inc., to work for them and was to receive two dollars an hour pay for it. He testified that having acquired the truck, he came to Peterson and asked for work for his car, and that Peterson said he could send the car down to work and the price was to be two dollars per hour for the truck and chauffeur, and that pursuant thereto the owner of the car sent the same down to the defendant. Steinhauser testified that under his arrangement with Peterson he was to call up the main office of the defendant, and that from there he would receive directions where to send the car every morning, unless the car worked all of the twenty-four hours; that sometimes the car did work twenty-four hours, when the owner, Steinhauser, supplied another chauffeur, the car being operated in two twelve-hour shifts. Steinhauser testified that having received directions from the main express office where his car was to be sent, he had no further control over it during the day, but that the car was from then on subject to the directions of the express company. On cross-examination Steinhauser testified that when he went to see Peterson he told him that he would like to cart the goods of the Adams Express Company, Inc., if he could get the work, and that he had a car; that he had not previously worked for the express company, nor had he theretofore carted any goods for it. Steinhauser testified that he called up the defendant express

company every morning for directions as to where his truck was to be sent. The truck after the close of the day's work was each day returned to the garage of the owner, Steinhauser, excepting on such days as the truck was used continuously throughout the twenty-four hours of the day. Steinhauser also testified that the truck was a van, eleven feet high from the ground, and about twenty-four feet long, and seven feet six inches in width; that it was closed and locked, and that when in use the express company kept the key of the lock and was accustomed also to seal the truck when transporting its goods; that a time card was kept by the express company, and as the truck went from one station to another in transporting express company goods the time card was stamped by the employees of the express company at the various stations, so that a record was kept of the hours of actual service for which the express company was required to pay.

Moses, the driver of the car, testified that at the time of the accident it was transporting goods for the express company; that he was at all times employed by the owner of the car, Steinhauser, and received his pay from him; that there was also employed in driving the car, when its services were required for the full twenty-four hours continuously, another chauffeur by the name of Simkowitz, who was a brother-in-law of the owner of the car. Moses further testified that on the day of the accident he took the truck out from the garage and proceeded to the office of his employer, Steinhauser, and from there proceeded to the express company, where instructions were given him that he would get a load at Park Place to take to Long Island.

Peterson, the superintendent of transportation for the defendant express company, testified that he made the arrangements with Steinhauser for the rental of the truck; that Steinhauser called upon him and told him that " he had purchased this van and wanted to haul goods for the Adams Express Company," and that he, Peterson, told Steinhauser he could " cart these goods " for the defendant, and fixed the price for such cartage at two dollars per hour. Peterson agrees with Steinhauser that he informed the latter each day where to send the truck, and that in consideration of the

payment of two dollars per hour the defendant " expected a certain amount of goods to be delivered."

At the close of the evidence counsel for the defendant, appellant, moved to dismiss the complaint upon the ground that the plaintiff had failed to establish that the driver of the truck was the servant of the express company at the time of the accident. This motion was denied, and the case was submitted to the jury as against said defendant. It seems to me that the court clearly erred in refusing to grant the defendant's motion for the dismissal of the complaint. I think it clearly appears from the evidence that at the time of the accident, Moses, the driver of the car, was in the employ of the defendant Steinhauser and was engaged at the time in Steinhauser's business. Steinhauser, in consideration of the payment to him of two dollars an hour, had agreed to furnish the truck in question and to equip and operate and drive the same in transporting the defendant's goods. There is practically no dispute in the evidence as to just what the arrangement was between the owner of the car and the express company. The chauffeurs who drove the car were both selected, employed and paid for their services by Steinhauser. Steinhauser had purchased the truck for the purposes of his business, which was general trucking. There is no evidence that either driver of the truck had ever done any work for the express company prior to the arrangement between it and Steinhauser. All of these arrangements with reference to the transportation of the defendant's goods were made between Steinhauser and the company. The company had no voice or interest whatever in the selection of the drivers of the car. It had no authority to engage such drivers nor to discharge them. The entire expense for gasoline and the operation of the car fell upon Steinhauser, and at the close of each engagement in trucking defendant's goods, the car was returned to Steinhauser's garage. Each day Steinhauser applied to the defendant for instructions where he was to send his truck, and having been informed where its services would be required, he directed the chauffeur in charge of the car to proceed to the point designated. The only relationship between the defendant and the chauffeur was that when the car appeared ready for business the agents

of the defendant directed it where to go to get and to transport the defendant's goods. Under such circumstances, there can be no doubt but what the driver of the car, Moses, at the time of the accident, was the servant of Steinhauser, and that the defendant was not liable for the negligence of said driver. At the time of the accident the driver was upon the business of his employer, Steinhauser, engaged in earning the two dollars an hour which the company agreed to pay Steinhauser for the transportation of its goods by means of his truck. No claim was made upon the trial nor upon this appeal that the defendant had any voice in the selection of the chauffeur, and it was powerless to discharge him. Under such circumstances it cannot be reasonably claimed that Moses was the servant of the express company at the time of the accident. Nor can it be said that Moses, a servant in the general employ of Steinhauser, was at the time a special servant of the express company, and that the latter is to be held liable for his negligence. In *Maxmilian* v. *Mayor* (62 N. Y. 160) it was said: " This rule of *respondeat superior* is based upon the right which the employer has to select his servants, to discharge them if not competent, or skillful or well behaved, and to direct and control them while in his employ. (*Kelly* v. *The Mayor*, 11 N. Y. 432.) The rule has no application to a case in which this power does not exist. (*Blake* v. *Ferris*, 5 N. Y. 48.) It results from the rule being thus based, that there can be but one superior at the same time and in relation to the same transaction."

The rule as to when a hirer can be said to have control of the servant is stated in Shearman & Redfield on Negligence (Vol. 1 [6th ed.], § 162) as follows: " The hirer cannot properly be said to have control of the servants, unless he has the right to discharge them and employ others in their places in case of their misconduct or incompetency; that being the only practicable means by which free servants can be controlled. If, therefore, the hirer has no such power, he is not responsible to anyone for the faults of the servants."

Nothing appears in the contract between Steinhauser and Peterson, representing the defendant company, giving to the defendant any control over the driver of the truck, and, so far as the evidence discloses, the relationship of the parties

as it originally existed at the time the arrangement was made was at no time changed during the course of defendant's hiring of the truck to transport its goods. The owner of the car, Steinhauser, was an independent contractor and undertook to transport goods for the defendant in consideration of the payment of two dollars an hour for the use of his car in such transportation. As between the express company and Steinhauser the contract was purely one of service. Moses, the driver of the car, was merely carrying out the arrangement made by his employer, Steinhauser, with the defendant. The case of *McNamara* v. *Leipzig* (227 N. Y. 291) seems to be a controlling authority upon the facts in the case at bar. In that case the court said: " The performance of the agreement had been entered upon and was being carried out at the time of the accident. In the performance the defendant exercised no control in the selection of the chauffeur, or over him, his wages or the car, other than to direct him when and where to come with the car for the defendant and where to transport him. The car when not in the use of the defendant was kept in the garage of the company, was there cared for and supplied with the necessaries by the company, and there the chauffeur received calls of the defendant for the use of the car and the chauffeur. In the matters of coming to and leaving the defendant and of taking him to the places directed by him the chauffeur was under his directions."

The court held that the defendant in that case was not liable, but that the garage company was responsible for the negligence of its chauffeur. The court further said: " The relation of principal and agent obviously did not exist. The liability of the defendant depends on the doctrine of the liability of a master for the acts of his servant done in the course of his employment. The relation of master and servant is created by contract, express or implied. Of the elements which may constitute it, those that the servant must, in the course of the employment, be doing the work of the master under the will, direction and control of the master throughout all the details of the work, are essential. * * * A servant lent or let by his master to another does not become the servant of the other because the other directs what work is to be done, or in what way it is to be done. If the

servant remains subject to the general orders of the person who hires and pays him he is still his servant, although specific directions may be given him by the other from time to time as to the work to be done. The other person has the right to exercise the degree of control of the servant essential to secure the fulfillment of the agreement between the master and himself.''

In *Hartell* v. *Simonson & Son Co.* (218 N. Y. 345) the Court of Appeals, at page 349, said: '' A servant in the general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower, who is liable for his negli-gence. *But if the general employer enters into a contract to do the work of another, as an independent contractor, his servants do not become the servants of the person with whom he thus contracts, and the latter is not liable for their negligence.*'' (Italics are the writer's.)

In conclusion, the Court of Appeals said, in *McNamara* v. *Leipzig (supra)*: '' In the present case the written agreement defines the relation and liabilities of the parties. It gave for a consideration to the defendant the use, at demand, of the automobile and a chauffeur to operate and run it for a certain period. The company possessed, managed, cared for and supplied the automobile and selected, employed and controlled the chauffeur who operated the car for it. The extent of the defendant's control was to direct the chauffeur when and where to come with the automobile, where to go and where to stop. In obeying those directions the chauffeur was carrying out the company's work under the agreement. The defendant had no authority, management or care over the automobile or as to the manner in which it should be treated or driven. The chauffeur did the company's business in his own way and the orders given him by the defendant merely stated to him the work which the company had arranged to do.''

The above language seems to me to be pertinent to the conceded facts in the case at bar. Here we have the renting of the use of the truck by Steinhauser to the defendant Adams Express Company. For a consideration of two dollars an hour the express company was to have the use when it wished of the truck and a chauffeur to drive it. Steinhauser, the

owner, owned, managed, cared for and supplied the truck, and selected, employed and controlled the driver who operated it. The only control of the defendant was to direct where the truck was to go and when in the performance of the contract which it had with the owner. In following the defendant's instructions the driver of the car was merely performing the work of his employer under his arrangement with the defendant.

That the driver, Moses, was at the time of the accident in the employ of Steinhauser and not of the defendant, appellant, is, I think, sustained by the decisions in *Kellogg* v. *Church Charity Foundation* (203 N. Y. 191); *Driscoll* v. *Towle* (181 Mass. 416); *Baker* v. *Allen & Arnink Auto Renting Co.* (231 N. Y. 8), and *Weaver* v. *Jackson* (153 App. Div. 661), and many other decisions holding that under the circumstances existing in the case at bar the owner of the car and not the hirer is responsible for the negligence of his servant, the driver.

The respondent relies upon the decision of this court in *Braxton* v. *Mendelson* (190 App. Div. 278). That case is clearly distinguishable from the case at bar. In the *Braxton* case the defendant, the owner of the truck, had leased it with others under a yearly contract with a dairy company to furnish trucks to work by the day for such company; the company had full charge of the trucks; the truck in question was kept at the hirer's plant and was taken out every evening and returned to the same place every night, and was at all times exclusively in the control and possession of the hirer, save only when repairs were required upon it, when it was temporarily returned to the owner; the driver of the car was assigned to the hirer's organization, and it was necessary for him to become a member of the Milk Drivers' Union in order to drive the car for the hirer; the chauffeur received his orders solely from the hirer, and had no dealings with his original employer, aside from receiving his wages and authority with reference to repairs upon the car; whereas, in the case at bar, the driver of the truck remained under the control at all times of the owner of the car, from whom he received directions each day where, in the performance of the owner's contract with the express company, he was to proceed for work; each day the car was returned to the owner's garage, and

each morning the driver obtained his directions directly from the owner as to where his services were required. While, as before stated, in carrying out his master's contract with the express company, he received directions from the express company from time to time during the day, where they desired their goods to be taken, such directions in no manner involved the services of the driver to the express company, but were merely to direct where the express company's goods were to be taken pursuant to its contract with the owner of the car.

I am, therefore, of the opinion that at the time of the accident the defendant, appellant, was not responsible for the negligence of the driver of the car, and that, therefore, the said defendant's motion for dismissal of the complaint should have been granted.

If this be so, there is no necessity for considering the other grounds upon which the defendant asks for a reversal of the judgment, namely, as to whether plaintiff's intestate left dependent relatives who were entitled to the compensation awarded by the verdict of the jury for the death of the intestate.

The judgment and order appealed from should be reversed, with costs, and plaintiff's complaint dismissed, with costs.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.