## Interstate Coal Company v. Trivett.

(Decided November 18, 1913).

## Appeal from Knox Circuit Court.

1. Mines and Mining—Duty to Furnish Props—Not Confined to Permanent Roof.—Under Section 2739b-7, Kentucky Statutes, requiring the owner, lessee or operator of every mine to furnish props when requested by a miner, the duty is not confined to furnishing props for the permanent roof of the mine, but may extend to draw slate, and where there is a request and a failure to furnish props, and the miner is injured, the question whether or not the failure was the proximate cause of his injuries is ordinarily for the jury.

2. Mines and Mining—Action for Damages—Evidence—Question for Jury.—In an action by a miner against a mine owner for damages for personal injury, evidence examined, and the proximate cause of plaintiff's injury and the contributory negligence of plaintiff held questions for the jury.

3. Mines and Mining—Personal Injury—Compromise—Fraud—Infancy.—A compromise of a claim for personal injuries is not binding if obtained by fraud or plaintiff is an infant when the compromise is made.

4. Mines and Mining—Personal Injuries—Compromise—Tender.—Where, pending an action for damages for personal injuries, a compromise is effected, which plaintiff attacks on the ground of fraud and infancy, the payment into court of the amount of the compromise and interest by the checks of plaintiff's attorneys, accompanied by an order of court reciting that the sum has been so paid is a sufficient tender to enable plaintiff to continue the prosecution of the suit.

5. Mines and Mining—Independent Contractor.—Where the manner and method of mining coal is subject to the control of the master, one who is paid by the ton is not an independent contractor.

6. Mines and Mining—Owner—Liability.—The owner of a mine cannot relieve himself of the duties imposed by statute for the protection of human life by entering into a contract with a third party to do the work at so much a ton.

BLACK, BLACK & OWENS for appellant.

J. D. TUGGLE and J. M. ROBSION for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, C. M. Trivett, while at work in the mines of the defendant, Interstate Coal Company, was struck by a piece of falling slate and severely injured. In this action for damages he recovered a verdict and judgment of $1,750. The coal company appeals.

The defendant owns and operates a coal mine at Trosper, in Knox County, Kentucky. On September 18, 1910, plaintiff arrived from his home at Dante, Virginia, at defendant's mines, and sought employment. Not caring to dig or load coal, he asked for "company work," or work by the day. Not being able to furnish him this character of employment, the mine foreman, Williams, took him into the mine and showed him rooms 31 and 33, and offered him a job of cutting and loading coal until the mine could furnish him the kind of work he desired. The two rooms were not in a condition to begin work in at the time, as the slate had fallen, so the foreman offered to pay plaintiff and a friend who had accompanied him, to clean up the rooms so that they could be worked. Not caring to do this, plaintiff and his friend went out to the commissary, where they met a man by the name of Hill, who had a contract with the company to load the coal in rooms 31 and 33 at a stipulated price per ton. Hill wanted somebody to work for him, so plaintiff and his friend saw Williams, the foreman, and asked him if he had any objection to their working for Hill until they could get company work. Williams said he had no objection. Plaintiff and his friend went to work for Hill on Wednesday night and loaded several cars. When they went to work the rooms had been properly cleaned up. After working there Wednesday night, plaintiff decided that he would not load coal any more. On Monday plaintiff went to the drum house. There he saw the foreman, Williams, and asked if he had a job ready for him. Williams told him that he did not, but that he could go and load coal for Mr. Hill that day, and maybe he would have a job for him the next day. Plaintiff asked him if he had any timbers in the place. Williams said he did not. Plaintiff told him that they had to have timbers. Williams said "That is all right; go ahead and I will send you timbers in there today." This conversation took place at the incline, about 100 yards from the drift mouth. Williams said he thought it would be safe to go ahead. When plaintiff went in he did not expect to dig coal. On going in they loaded the coal in room 33. While loading the car Hill went in room 31. After dinner they went back to room 31, and some time in the evening cleaned it up and loaded one more car. They had the car about loaded. There was a loose piece of coal about two cuts, or eight or ten feet, from

the face. Plaintiff told hill he would pick off the lump of coal and put it in the car, and Hill said he would go and get a bar and straighten a piece of track that was broken. Plaintiff picked up his pick and sounded the roof and put his hand against the top for the purpose of seeing whether it was solid or drummy. The draw slate was sandstone and seemed solid. Plaintiff looked all around it and under it, but could find no cracks. His examination revealed nothing wrong with it. He then stepped under the slate a little piece from the crack. He was then eight or ten feet from the face. He hit one lick with the pick into the lump of coal. He then drew back and struck another lick, when a large piece of slate fell on him, severely injuring him. When he examined the slate he used the pick. Mr. Williams said to him that these rooms were in a safe condition. Plaintiff had never had any previous experience in the mine. He had run an electric motor in the mines of West Virginia. At the time of his injury he was not 21 years of age. Mr. Williams did not send any props to either room. If props had been sent he could and would have propped the slate. At the time of the injury he was working in a narrow neck in that room, eight or ten feet wide. Back from him the room was considerable wider. The room could have been propped on each side, within eight feet of the face, and a prop could have been set in the middle. One prop would have been sufficient to hold the slate that fell on him. On cross-examination witness stated the slate had been falling out some seven or eight feet back. Plaintiff saw that it had been taken up to that place, and saw the slate there. He worked on it nearly all of the day Monday, knowing that this was the case. He did this because he was working by the day and did not know the slate was going to fall. When he first went to rooms 31 and 33 with Mr. Williams he saw the roof was falling in these rooms. At that time it had already fallen.

According to the evidence for the defendant, room 31 had been driven in about 150 feet from the fourth right entry. The width of this room across the face of the coal was about 25 feet. The permanent roof, that is the roof after the draw slate has been taken down, is called the "bad top." They were driving on a narrow neck about eight feet wide. At the time of plaintiff's injury this work had progressed about 18 feet. It was in this neck, and near the face of the coal he was mining, that plaintiff was injured by the falling draw slate. The

roof in the narrow neck was all right. Several witnesses testified that it was not only not customary, but was not practicable, to prop the draw slate where plaintiff was at work. The draw slate is a layer of slate between the roof of the mine and the coal. It is a shelly, disintegrating substance, which often falls when the coal is shot down, and is always in danger of falling when the coal is taken out and it is permitted to remain. It is the universal mining custom to take it down. The air slacks it easily and quickly. It cannot be securely propped. It is the coal digger's duty to take down draw slate. This was a part of Hill's contract. Witness, Williams, did not have any positive recollection as to whether he said anything to plaintiff about furnishing props or not.

Section 2739b-7, Kentucky Statutes, is as follows:

"Each owner, lessee or operator of every mine to which the mining laws of the State apply, shall provide and furnish to the miners employed in said mine a sufficient number of caps and props, said props to be sawed square at each end, to be used by said miners in securing the roof in their rooms, and at such other working places where by law or custom of those usually engaged in such employment it is the duty of said miners to keep the roof propped, after the miner has selected and worked the same."

There is practically no denial of the fact that plaintiff made a request for props. Plaintiff says that if he had had the props he could and would have propped the slate. Defendant contends that the duty of furnishing props applies only where it is necessary to use them to support the permanent roof of the mine, and not to a case of mere draw slate, which the evidence shows it was neither practicable nor customary to prop. We are not, however, disposed to give the statute such a narrow construction. The protection of the miner is the chief purpose of the statute. It may often happen that draw slate may be propped while the miner is engaged in getting out the coal. Where the miner's request for props is not complied with, and the miner is injured, the question whether or not the failure to furnish the props was the proximate cause of his injuries will ordinarily be for the jury. In the present case plaintiff says that if the props had been furnished he could and would have propped the draw slate, and had he done so he would not have been injured. On the other hand, the evidence for the defendant is that it was neither customary nor prac-

ticable to prop the draw slate. Under these circumstances the proximate cause of plaintiff's injury was a question for the jury.

Nor can we say as a matter of law that plaintiff was guilty of contributory negligence. While he had had some experience in mines in West Virginia in other employments, he had never had any previous experience in defendant's mine. At the time of his injury he was not 20 years of age. He says that the mine foreman assured him that the place where he was put to work was safe. He also says that he examined and tested the slate and there was nothing in its appearance to indicate that it would fall. Considering his lack of experience and the short time he had been at work, we cannot say that the danger from the draw slate was so obvious that a person of ordinary prudence would have refused to go on with the work.

After the suit was instituted defendant effected a compromise with plaintiff and his mother by paying him $100. By amended answer this compromise was pleaded. Plaintiff alleged that the compromise was obtained by fraud, and that he was an infant at the time it was made. His evidence is to the effect that a physician representing defendant told him that his attorneys had been bought up by the coal company and that the suit would be dismissed. There was also evidence tending to show that plaintiff, at the time of the alleged settlement, was an infant. Manifestly, the settlement was not valid if obtained by fraud, or if plaintiff was an infant when the settlement was made. This issue, we think, was properly submitted to the jury. Defendant, however, insists that plaintiff could not continue the prosecution of his suit because no proper tender of the amount paid him was made to defendant. It does appear, however, that the attorneys for plaintiff gave their personal checks to the clerk of the court for the sum of $103.50, which represented the amount of the compromise, together with interest thereon. An order of the court recites this sum was paid into court. That the clerk accepted checks instead of cash is immaterial. So far as defendant was concerned, there was a payment of the money into court, and, therefore, a restoration of the amount of the compromise. We, therefore, conclude that the tender was sufficient to enable plaintiff to continue the prosecution of the suit.

The instructions are complained of. It is true that they are too long, and, therefore, subect to verbal criticism, but on the whole we conclude that the real issues in the case, viz.: Whether or not defendant's failure to furnish the props was the proximate cause of plaintiff's injury, and whether or not plaintiff himself was guilty of contributory negligence, were properly submitted to the jury.

The evidence fails to show that Hill, who at the instance and direction of defendant's foreman employed plaintiff, was an independent contractor. Though paid by the ton, the defendant retained control over the manner and method of doing the work. Moreover, we have frequently held that the owner or operator of a mine cannot relieve himself of the duties imposed by statute for the protection of human life by entering into contracts with third parties to do the work at so much a ton. Interstate Coal Co. v. Baxavenie, 144 Ky., 172; Edwards' Admr. v. Lam, 132 Ky., 32; Curbin v. Grimes, 132 Ky., 555. For a discussion of other questions raised, see Interstate Coal Co. v. Laura Trivett, 155 Ky., 795, this day decided.

Finding in the record no error prejudicial to the substantial rights of the defendant, it follows that the judgment should be affirmed, and it is so ordered.