ALEXANDER PAQUET, Plaintiff, *v.* PICTORIAL REVIEW HOLDING CORPORATION and Others, Defendants.

Municipal Court of New York, Borough of Manhattan, Third District, May, 1927.

Negligence — persons liable — action for injuries suffered when plaintiff tripped over hand truck and fell into open elevator shaft — servants of independent contractor left truck in way — leaving elevator door open was not cause of accident — defendant corporation is not liable — plaintiff assumed risk.

The plaintiff sues to recover for injuries suffered when he tripped over a hand truck which caused him to fall into an open elevator shaft. The plaintiff was employed by a trucking company and was making a delivery of cases of paper to the plant of the defendant corporation at the time of the accident. After backing his truck to the elevator door, employees of a third person who had a contract with the defendant corporation to unload all merchandise proceeded with the work of unloading. An employee of the defendant corporation did not direct the unloaders and only determined when the elevator was loaded to its capacity and where the cases of paper should be stored. The unloaders left a hand truck on the motor truck while they were taking the elevator load to its destination. The door of the elevator was not completely closed. The plaintiff tripped over the hand truck which had been left on his motor truck,

fell through the opening in the door of the elevator and was injured. The servants of the person who was engaged to unload the truck were servants of an independent contractor and not the servants of the defendant corporation and since the immediate cause of the accident was the negligence of those servants in leaving the hand truck on the motor truck, the defendant corporation is not liable.

Even though the defendant corporation was negligent in leaving the elevator door open that negligence was not the proximate cause of the accident.

Under the circumstances the plaintiff assumed the risks and dangers incident to the work at hand.

Motion for direction of a verdict in favor of the defendant in an action for personal injuries.

*Barker D. Leich*, for the plaintiff.

*E. C. Sherwood* [*Raymond J. Scully* of counsel], for the defendant Pictorial Review Holding Corporation.

Noonan, J. This action was brought by the plaintiff to recover damages for personal injuries, and was tried before the court and a jury, against the defendant Pictorial Review Holding Corporation. The other defendants failed to appear on the trial, but no inquest was taken against them. At the close of the entire case motions were made to dismiss the complaint and for a direction of a verdict in favor of the defendant Pictorial Review Holding Corporation, on which decision was reserved. The case was then permitted to go to the jury, which brought in a verdict of disagreement. The question now arises on the motion for the direction of a verdict.

On December 4, 1924, the plaintiff was in the employ of the Apfel Auto Trucking Company as a driver of a motor truck. On that day he was engaged in delivering a load of merchandise, consisting of cases of paper, to the warehouse of the defendant Pictorial Review Holding Corporation. To make a delivery the plaintiff backed up the truck against a platform in front of the elevator opening in the building. At the time he arrived at the warehouse a man named Tomlinson, in the employ of the Pictorial Review Holding Corporation, directed him where to back up his truck and opened the elevator door. This elevator door was in two sections, and so adjusted mechanically that, when one section was pulled up or down, the other section moved in the opposite direction. Tomlinson then summoned the employees of the defendants Sheridan & Duncan, who were to act as unloaders of the merchandise. Sheridan & Duncan were independent contractors, under a contract with the Pictorial Review Holding Corporation to do the work of unloading, receiving a compensation based on the weight of the cases.

In response to Tomlinson's call, three men came from Sheridan

& Duncan and started the work of unloading. There was a gap between the tail of the truck and the floor of the elevator, which had been moved up from the ground level to a position parallel with the end of the truck. This gap was bridged by means of a steel plate three feet square, which served as a bridge from the tail of the truck to the floor of the elevator. Cases of paper weighing about 500 pounds each were placed by the employees of Sheridan & Duncan on a hand truck, and one of these employees pushed the hand truck across the steel plate to the floor of the elevator. The elevator having been loaded to capacity, the employees of Sheridan & Duncan deposited the steel plate and the hand truck on the motor truck. These men then got on the elevator and one of them pulled down the upper section of the elevator door, but did not close it tight. There was an open space between the upper and lower sections, variously estimated by the witnesses from about three to four feet.

During the work of unloading Tomlinson was on the truck checking the cases of paper. The elevator with the men on it then ascended, so that the cases of paper on it might be placed in one of the upper floors of the warehouse. After the elevator had ascended, the plaintiff, who had assisted in the work of unloading, was getting a case ready for the second load. In shoving the case around to a favorable position on the floor of the truck, so that it might be loaded on the hand truck for the second load, he tripped against the hand truck, and in so tripping was precipitated over the opened elevator door into the elevator shaft. In consequence the plaintiff received injuries for which he brought the action.

It seems to me the first question to determine is whether Tomlinson was in charge of the employees of Sheridan & Duncan in unloading the merchandise. The evidence shows that it was these employees who placed the hand truck on the motor truck at the time they got on the elevator, and who left the elevator door open when the elevator ascended.

After a careful review of the evidence, it seems to me that Tomlinson had no control over these employees of Sheridan & Duncan in the unloading of the cases. All of the witnesses testified that Tomlinson's only duty was to check up the weight and numbers of the cases. The actual unloading of the cases was done by these employees of Sheridan & Duncan. It is true that Tomlinson told the plaintiff where to back in his truck. It is likewise true that he informed the loaders when a sufficient number of cases had been placed on the elevator. He also gave directions as to where the cases were to be placed in the upper part of the building. There

is evidence also showing that, when the truck backed in, Tomlinson opened the elevator door.   Other than these acts enumerated, Tomlinson took no part in the work, and gave no directions to the men unloading the cases.   These men performed their work in their own way.   Sheridan & Duncan were under a contract to perform this work of unloading.   There is nothing in the case, therefore, to justify the holding that Tomlinson was responsible for the acts of the employees of Sheridan & Duncan in the unloading of these cases.   (*Braxton* v. *Mendelson*, 233 N. Y. 122; *Wagner* v. *Motor Truck Renting Corporation*, 234 id. 31; *Hanrahan* v. *New York Edison Co.*, 212 App. Div. 295.)

It is not even contended that Tomlinson gave Sheridan & Duncan's men any instructions, other than what floor the cases were to go and when the proper weight capacity of the elevator had been reached.   These employees of Sheridan & Duncan were paid by their employers, who in turn were paid a compensation by the Pictorial Review Holding Corporation for the work of unloading the cases.   It was necessary for the Pictorial Review Holding Corporation to have some one in charge to check the weight of the cases and to tell the men where to put the paper.   If, therefore, it can be said to be negligence to leave the elevator door in an open condition and to leave the hand truck on the floor of the motor truck, it was the result of an act or an omission by employees of an independent contractor, and cannot be charged to this defendant.

Assuming, however, that the present defendant is responsible for the opened elevator door, and that such act constituted negligence, I fail to see how such an act can be the proximate cause of the accident.   The plaintiff tripped over the hand truck, and this tripping caused his fall.   The leaving of the hand truck on the motor truck was not of itself an act of negligence.   The tripping over the hand truck was the first active cause of the accident. There may be, of course, contributing causes.   It is claimed that the open elevator door was such a contributing cause.   The present defendant, however, should not be held responsible for such contributing cause, unless it can be said that it was bound to anticipate that such a cause would result in an accident.

In *Leeds* v. *New York Telephone Co.* (178 N. Y. 118) the court said: " Was the specific act of negligence charged against the defendant in this case the natural, efficient and, hence, a proximate cause of the accident; or was it the result of the intervention of an independent cause, which defendant was not bound to anticipate and without which the injury would not have happened? "

It also must be remembered that the plaintiff testified that, in

falling, he did not touch the elevator door.   The plaintiff's body, therefore, in falling must have been precipitated from the tail of the truck over the intervening space, and then over the elevator door into the shaft.   It is somewhat difficult to comprehend how this could have happened.   It is more natural to assume that, in falling, his body struck the door, which on account of its delicate mechanism descended, in this way permitting the plaintiff's body to go into the shaft.   The testimony shows that there was a space of about three to four feet between the upper and lower sections of the elevator door.   Under ordinary circumstances this condition of the elevator door would be sufficient protection against any accident.   It cannot be said, therefore, that, assuming that the present defendant was responsible for the acts of the employees of Sheridan & Duncan, it was bound to anticipate an accident such as happened to the plaintiff, and obliged to take means to prevent it.

From another angle of the case I also have come to the conclusion that the plaintiff should fail to recover.   It seems to me that the plaintiff assumed the risks and dangers incident to the work at hand.   The plaintiff testified that he assisted the employees of Sheridan & Duncan in the work of unloading the cases.   He admitted that he knew that these men were using the hand truck for the purpose of removing the cases from the motor truck.   He testified, however, that he did not know these men had left the hand truck on the motor truck after they had gone on the elevator. The plaintiff also testified that he knew that the elevator door was open.   In regard to the presence of the hand truck on the motor truck, the plaintiff testified: " Q. Now, you say you saw the elevator disappear; that is correct, isn't it?   A. Yes.   Q. After it was loaded up — when it was loaded up — you saw it go up, and at that time was this hand truck between you and the elevator? A. I didn't see it.   Q. You didn't notice it?   A. Well, it must have been there.   Why, if I fell over it, it must have been there."

It is well settled that an employee assumes the obvious risks of his employment.   (*McLean* v. *Studebaker Bros. Co. of New York*, 221 N. Y. 475, 478; *Dougherty* v. *Pratt Institute*, 244 id. 111.)

In conclusion, therefore, I have reached the opinion that in every aspect of this case the motion for a direction of a verdict should be granted in favor of the defendant, and an exception is granted to the plaintiff.