## Bowen v. Gradison Construction Company.

## South v. Same.

## Owings' Administrator v. Same.

(Decided October 17, 1930.)

(As Modified on Denial of Rehearing December 19, 1930.)

TURNER & CREAL and M. C. REDWINE for appellants.

W. B. WHITE and ROBERT H. WINN for appellee.

Opinion of the Court by Drury, Commissioner—
Reversing.

All three of these suits are the result of one accident, in which Laura Owings was killed, and Bettie Bowen and Macie South were seriously injured. Three trials have been had. Upon the first the trial court directed verdicts for the defendants. An appeal was prosecuted to this court, and the judgment was reversed as to the Gradison Construction Company. See 224 Ky. 427, 6 S. W. (2d) 481, 483. A second trial on January 28, 1929, resulted in the jury failing to agree. On November 12, 1929, all three of these cases were submitted on the law and facts to the court, upon the transcript of the evidence heard at the trial in January, 1929, with this result:

> "That each of the petitions in said three cases be, and the same is now, dismissed, and that the

defendant, Gradison Construction Company, recover of each of the plaintiffs its costs herein expended in each respective action.

"The plaintiffs in each of the cases aforesaid having moved the Court to state separately herein his findings as to the law of these cases and as to the facts, the Court sustains said motion and findings are as follows:

"The Court finds from the evidence that at the time and place of the accident and injuries in question, Owen Richards, the driver of the truck in question, was not acting under the control of, or under the direction of, or in the employment of the defendant, Gradison Construction Company.

"In view of the foregoing finding of facts the Court finds that as a matter of law the defendant cannot in any event be responsible for the accidents and injuries in question.

"In view of the foregoing findings, the Court is of the opinion that it is unnecessary to determine the other controverted facts herein or to determine the law applicable to same."

Motions and grounds for new trial filed by each of the plaintiffs were overruled, and they appeal.

Many of the facts are stated in the opinion delivered on the former appeal, and they are not here recited, but we will state briefly some of them.

This accident occurred on Saturday, April 24, 1926. The truck involved belonged to James Richards. It was driven by his son, Owen Richards. This truck was hired to the Gradison Construction Company upon these terms:

Richards furnished his truck and the driver, oil, gasoline, and everything else necessary for its operation, and the Gradison Construction Company paid him $2.50 an hour for its use. Richards hired and paid this driver, and Gradison Construction Company had no right under the contract to discharge him or to put upon this truck a driver of their selection, but they had the right to send the truck home and terminate this contract when they chose. The Gradison Construction Company directed the loading, unloading, and operation of this truck.

The questions on this appeal are:

(a) Was there any evidence the injuries sued for resulted from the negligent operation of this truck?

(b) Had the Gradison Construction Company such control over it as made it responsible for that negligence?

The trial court gave a negative answer to question (b), and hence did not answer question (a). We find both questions should be answered in the affirmative. When the Gradison Construction Company made this contract with Richards, it, in effect, said to him: "Your driver shall be our driver and your truck, our truck, so long as we shall both be pleased." The pronoun "our" is used here to refer to the Gradison Construction Company alone, and not to it and James Richards.

In the opinion upon the former appeal we said this, and cited many authorities in support of it:

"And if that company (the Gradison Construction Company) seeks to be relieved on the ground that Owen Richards was the servant of James W. Richards, an independent contractor, or relies upon any other affirmative defense, the burden was upon it to establish that defense."

The Gradison Construction Company has failed by the evidence adduced to sustain this burden.

In Keen v. Keystone Crescent Lumber Co. (Ky.), 118 S. W. 355, these were the facts: One Thacker contracted with the lumber company to furnish his sawmill and a fireman for $100 per month. Thacker employed Shade Keen to fire the boiler, and paid him $1.50 per day. The boiler exploded, killing Keen. His administrator sued the lumber company, and this court held he was the servant of the lumber company.

In Postal T.-C. Co. v. Murrell, 180 Ky. 52, 201 S. W. 462, L. R. A. 1918D, 357, we affirmed a judgment against the Postal T.-C. Co., and the boy whose negligence caused the injuries was riding his own bicycle.

In the case of Williams v. National Cash Register Co., 157 Ky. 836, 164 S. W. 112, we reversed a judgment for the company and sent the case back for further proceedings, although it was shown the automobile inflicting the injuries belonged to Bert. Alexander, an agent of the company, and was being driven by his chauffeur.

In Waters v. Pioneer Fuel Co., 52 Minn. 474, 55 N. W. 52, 38 Am. St. Rep. 564, a teamster furnishing his

own team and wagons and hauling coal by the ton for a particular coal company exclusively was held to be the servant of the coal company, and it to be responsible for injuries resulting from his negligence.

Bon Jellico Coal Co. v. Murphy, 151 Ky. 450, 171 S. W. 160, and Interstate Coal Co. v. Trivett, 155 Ky. 825, 160 S. W. 728, we regard as very much in point. In those cases men were digging coal by the ton, yet they were held not be independent contractors.

The Gradison Construction Company is relying on the authorities below to sustain this judgment, but they do not do so, and we shall point out as briefly as we can the difference between those cases and this one that makes those authorities inapplicable. It places its chief reliance on the case of Berry et al. v. Irwin, 220 Ky. 708, 295 S. W. 1020. There Billiter & Wiley were engaged in the construction of a road from Elizabethtown to Bardstown. They had made with D. H. Smith a contract to get out, crush, and prepare the stone, and with Berry & Kelly they had made a contract to get this stone at the crusher and deliver it to the points on the road, where it was to be put down, at so much per ton. While Berry & Kelly used trucks in that transportation, there was nothing said in the contract about the instrumentalities they should use, and so far as that is concerned they might have used wheelbarrows had they seen fit. Billiter & Wiley had the right to tell them when and where to deliver and dump the stone, and that was all they had.

The construction company contends that case cannot be distinguished from this one, and that the position of Owen Richards in this case is identical with that of Tim Givans in that case. The facts in the two cases make a clear distinction. Berry & Kelly had certain definite work to do. They had a contract to deliver this stone. That was their work; they were independent contractors doing their own work in their own way. They could drive five miles an hour or twenty miles an hour, could haul full loads or half loads, use one-ton trucks or five-ton trucks, or even wheelbarrows, so long as they delivered the stone as and where it was needed. In that case we held Givans was the servant of Berry & Kelly. In this case the Gradison Construction Company hired from Richards his truck and driver, by the hour.

We wish to call attention to some evidence upon which the construction company relies. This is taken from Gradison's testimony:

"Did you have any control over Richard's driver? No, I didn't know who he was.

"Did you hire the driver of that truck? No.

"Did you exercise any control or have the right in your contract to exercise any control over the way the truck should be driven. No."

This is from the testimony of James Richards:

"Who hired Owen Richards to drive the truck? I did myself.

"Did Mr. Gradison have any right under your contract to tell you who should drive the truck? He did not.

"Did he have any right to hire a driver and put him on your truck? He did not.

"Did he have any right under the contract to direct how the truck should be run over the road? He did not.

"Who paid the driver of the truck? I did."

Both of these witnesses testify, in fact, all of the evidence is, that either Richards or Gradison could terminte this contract at any time.

We grant that ordinarily Owen Richards was the servant of James Richards, but a servant may be loaned or hired by his master for some special purpose so as to become, as to that service, the servant of the party to whom he is loaned or hired, and this is true even though the servant is selected, paid, and may be discharged by the original employer. 39 C. J. 127, sec. 1462. The test turns on who controls the servant in the named employment.

Here the construction company hired from Richards a truck and a driver; they were hired as an entity; neither could be retained or discharged alone. This entity was hauling material belonging to the construction company to be used in the making of a street the construction company was building, and the question is: Was Owen Richards then the servant of his father, James Richards, an independent contractor, as Givans was the servant of Berry & Kelly, or was he the servant of the construction company? We are not interested in

whose servant he was ordinarily, but whose servant was he while on the job at work under this contract? Who was then his master? Suppose the foreman of the construction company had said to Owen Richards: "Bring a load of sand first thing in the morning." Would he have hesitated one moment about whether or not he had that to do? Suppose he had that night stated his contract fully to the first ten men he met and asked each of them, "Must I haul this sand?" Does any one for a moment doubt what the answer would have been? With the power of discharge in its hands the construction company held control of this truck and driver. In Industrial Commission of Colorado v. Bonfils, 78 Colo. 306, 241 P. 735, 736, Edward C. Sprigg, a truckman, was killed while hauling coal for the Post Coal Company with his own truck, and under this arrangement:

"He was allowed to come and go as he pleased; need not report for work at any time nor at all unless he chose; could work for others if he desired. He called at the yard when he pleased, and was given coal to haul if there was any to be hauled when he called. The company was under no obligation to give him work, and he was under no obligation to work for the company; therefore he could quit when he chose, and the company could discharge him when it chose."

The contention was made that he was not a servant but an independent contractor, and in that opniion the court said:

"By virtue of its power to discharge, the company could, at any moment, direct the minutest detail and method of the work. The fact, if a fact, that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor. Franklin Coal & Coke Co. v. Ind. Com., 296 Ill. 329, 129 N. E. 811. The most important point 'in determining the main question (contractor or employee) is the right of either to terminate the relation without liability.' Industrial Comm. v. Hammond, 77 Colo. 414, 236 P. 1006. This is a confirmation by this court of the rule above stated as to control, because the right immediately to discharge involves the right of control. Sprigg was not employed 'for

the completion of a given task according to plan' (Ind. Com., supra); nor to haul a certain amount of coal (McKinstry v. Guy Coal Co., 116 Kan. 192, 225 P. 743, 38 A. L. R. 837); the amount of his work was not fixed either by time or measure (Muncie Co. v. Thompson, 70 Ind. App. 157, 123 N. E. 196); his work did not involve the furnishing of capital, shop facilities or assistants, and he did not contract 'to do certain work' or to furnish any materials (Arnold v. Lawrence, 72 Colo. 528, 213 P. 129). He was not an independent contractor.

"There are cases cited by defendant in error at variance with this, but they overlook, as it seems to us, the point that the right to immediately discharge gives complete control. In Norton v. Day Coal Co., 192 Iowa, 160, 180 N. W. 905, the court says a contractor 'is subject to no orders,' but, as we have shown, Sprigg was subject to any orders the company might give. If I hire Smith to plow for me at $4 per acre he is my servant; if Smith agrees to plow my 20 acres at $4 per acre, and I agree to pay him that sum for it, he is an independent contractor. In the first case I can discharge him at will and therefore control him. In the second I cannot discharge him or control him except as to result. We cannot attempt a comprehensive definition of employee or contractor, but the above are enough to show that Sprigg was the former."

The power of an employer to terminate the employment at any time is incompatible with the full control of the work that is usually enjoyed by an independent contractor. The master is he who can say to the servant, "Go" and he goeth, "Come" and he cometh, or "Do this" and he doeth it. Who has power to say, "Do this first," "Do it this way," "Do not do that," "Hurry up," or otherwise direct the detail of the manner of its doing? Whose work was being done? When we find that party, we have found the master.

"No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." Cockran v. Rice, 26 S. D. 393, 397, 128 N. W. 583, 585, Ann. Cas. 1913B, 570. In Messmer v. Bell, etc., 133 Ky. 19, 117 S. W. 346, 348, 19 Ann. Cas. 1, we said: "The power to discharge has been

regarded as the test by which to determine whether the relation of master and servant exists.'' It is an important test, but not the sole test; however it is the best test, upon the question of control, which is an important factor in determining if the relation of master and servant exists. Givans was driving for Berry & Kelly, who were independent contractors doing their own work in their own way and had to obey their directions, while Owen Richards was driving his father's truck, doing the construction company's work in its way and to avoid discharge, had to obey its directions. These two elements, whose work was being done and who had the power to control him, make him the servant of the Gradison Construction Company.

An ''independent contractor'' is one who is doing his own work in his own way. We have said his own work, and mean by that he must have under the employment some particular work assigned to him; that is, he must have some particular task he has a right to complete and an obligation to complete, and he must be subject to no control in the details of its doing. Other and fuller definitions will be found in See v. Leidecker, 152 Ky. 724, 154 S. W. 10, Louisville & N. R. Co. v. Smith's Adm'r, 134 Ky. 47, 119 S. W. 241. Who selects the servant, and who pays him, are of such minor importance in comparison to whose work is being done and who has the power to direct it, that this record presents no question of independent contractor. The testimony of these men that James Richards had the right of controlling Owen Richards fades out of the picture when they admit Gradison could discharge him at any time. That gave Gradison potential control, and if he failed to exercise it that is his misfortune.

In Nelson v. American Cement Plaster Co., 84 Kan. 797, 115 P. 578, 582, these were the facts: Jess Nelson was killed in a mine. His parents sued the owner. It asserted Jess Nelson was not working for it but was working for Jeb Jenkins, an independent contractor, under a written contract the owner of the mine made with John Messenger & Jeb Jenkins, by which they had full control of the mine and the owner paid them a stipulated price per ton for the product at the mouth of the mine. In that opinion the court said:

''If the company which owned the mine and made the contract with Messenger and Jenkins

retained outside of the written instrument the right to discharge at will one of the parties to the contract who was evidently a partner of the other, the contractors were not independent, but dependent upon the company, and the written instrument was not what it purported to be."

This is no new or strange doctrine in this state. See Hill v. Poindexter, 171 Ky. 847, 188 S. W. 851, L. R. A. 1917B, 699; Andrews Asphalt Paving Co. v. Hall, 227 Ky. 599, 13 S. W. (2d) 755, and the former appeal of this case, 224 Ky. 427, 6 S. W. (2d) 481. Such is the rule elsewhere.

In Finegan v. Piercy Contracting Co. et al., 189 App. Div. 699, 178 N. Y. S. 785, 786, the Piercy Company let to A. De Pinna Company a truck and furnished a chauffeur, by whose negligent operation of it Finegan was killed. The administratrix of Finegan sued and recovered against both the Piercy Company, and the De Pinna Company. In reversing the case as to the Piercy Company, and affirming it as to the De Pinna Company, the court said:

"It appears that the De Pinna Company hired the truck and driver from the Piercy Company; that the De Pinna Company used the truck and chauffeur to make delivery of its goods, and gave directions as to how those deliveries were to be made. It was therefore liable for a negligent act of the chauffeur while engaged in its business and subject to its direction and control. The Piercy Company was not an independent contractor. It did not agree to deliver goods for the De Pinna Company. It merely let to the De Pinna Company the truck and chauffeur with which the De Pinna Company could make its own deliveries. . . .

"The injury was occasioned by the negligent act of one person, and the question is simply who was the superior who was bound to respond for that person's act. Clearly it was the De Pinna Company."

For similar rulings in similar cases, see Olsen v. Veness, 105 Wash. 599, 178 P. 822; Olson v. Clark, 111 Wash. 691, 191 P. 810; Pease v. Gardner et al., 113 Me. 264, 93 A. 550; Sargent Paint Co. v. Petrovitzky, 71 Ind. App. 353, 124 N. E. 881; American Express Co. v. O'Con-

nor, 51 App. D. C. 359, 279 F. 997; Carr v. Burke, 183 App. Div. 361, 169 N. Y. S. 981; Braxton v. Mendelson, 190 App. Div. 278, 179 N. Y. S. 845; Burns v. Southern Pac. Co. et al., 43 Cal. App. 667, 185 P. 875; Core v. Resha, 140 Tenn. 408, 204 S. W. 1149.

All of these are cases where motor vehicles with chauffeurs were hired or loaned, and an accident happened while the vehicle was in the service of the party to whom it was let, and in each instance the chauffeur whose negligence caused the accident was held to be the servant of the lessee, the party whose work he was doing. This court is not alone in making a distinction between a servant working as Givans was in Berry v. Irwin and men working as Owen Richards was in this case; for example in Paquet v. Pictorial Review, etc., 130 Misc. Rep. 389, 223 N. Y. S. 686, Sheridan & Duncan were employed to deliver to the Pictorial Review concern certain paper for which their pay was based upon the weight of the material delivered. The Pictorial Review had a man in charge of the unloading, to check the weight of the material delivered and to tell the men where to put it. In such unloading Paquet was injured. He sued the Pictorial Review Corporation. It was held the plaintiff had no cause of action against the Pictorial Review.

We could show this same distinction is made by the courts of other states, but we will content ourselves by showing how the United States Supreme Court does it; for example, in Linstead v. C. & O. Ry. Co., 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453, we find these were the facts:

A train crew of the Big Four came over onto the tracks of the Chesapeake & Ohio Railway Company, bringing with them a Big Four locomotive and caboose which they were operating under the direction of the Chesapeake & Ohio and moving freight for it in the negligent doing of which Linstead was killed, and it was held the Chesapeake & Ohio was responsible for his death.

In Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480, these were the facts:

A stevedore named Terrence was loading with case oil the steamship Susquehanna. He had contracted with the Standard Oil Company for the use of its steam winch and its winchman to do the hoisting, and for this he was to pay the Standard Oil Company $1.50 per thousand. This winchman negligently and rapidly lowered a draft

of cases into the hold of the Susquehanna and injured Anderson, for which injuries he recovered a judgment against the Standard Oil Company, which was affirmed.

Let us take another look at these cases. Berry & Kelly had a definite lot of stone to haul and were hauling it, Sheridan & Duncan had a certain lot of paper to haul and they were hauling it, and the Standard Oil Company had a definite amount of case oil to hoist and they were hoisting it. In all these cases it was held these parties were independent contractors. On the other hand, the driver and truck of the Piercy Company was delivering goods, when, where, and as directed by the De Pinna Company, the Big Four train crew was switching and making up a train for and as directed by the Chesapeake & Ohio, and Owen Richards with this truck was hauling sand, stone, and cement when and as directed by the Gradison Company, and we are compelled to hold he was pro tempore its servant.

Innocent third parties should not be plagued and made to suffer by directors who do not direct, managers who fail to manage, and bosses who neglect to boss. It is only by imposing vicarious liability upon employers that such vigilance can be secured in the supervision of the men in their employment, as is needed, to protect others. It is only by such a rule that employers can be forced to weed out the reckless and the incompetent.

> "Charging him (the master) with the fault of the servant is a purely arbitrary act of the law. It may perhaps find its justification in that refuge to which courts at time have found themselves obliged to resort, namely, public policy and convenience." 7 Harv. Law Rev. 107.

This may be a harsh means, but is the only one organized society has been able to discover. The Gradison Construction Company is shown by the evidence here to have been the master and Owen Richards to have been its servant, at the time of this accident and it must answer for his negligence.

The Gradison Construction Company has cited other cases which we have considered and of which we shall make brief mention. Jahn's Administrator v. McKnight & Co., 117 Ky. 655, 78 S. W. 862, 25 Ky. Law Rep. 1758, is inapplicable because McKnight had no further control over the hauling being done by Granville Hooper or his

driver, John Thomas Hooper, than to direct where the packages to be hauled should be delivered.

Dempster Construction Co. v. Tackett, 215 Ky. 461, 285 S. W. 191, is so entirely inapplicable, we shall not use time or space in its discussion. The same is true of Structure Oil Co. v. Chambers, 208 Ky. 30, 270 S. W. 458. Bickel Coal Co. v. Louisville Tire Co., 228 Ky. 240, 14 S. W. (2d) 775, is not applicable because the driver, Louis Jones, had at the time of the accident stepped aside from the service of his master and was engaged on a mission of his own, a feature discussed in Dennes v. Jefferson Meat Market, 228 Ky. 164, 14 S. W. (2d) 408. For the same reason Mullen & Haynes Co. v. Crisp, 207 Ky. 31, 268 S. W. 576, does not apply. Wright v. Wilkins, 222 Ky. 144, 300 S. W. 342, has no relation to the question before us. Wilkins received his injuries while engaged in work entirely foreign to the work he was employed to do for Wright & Webb.

This is taken from 31 C. J. p. 473: "It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact. The principal consideration in determining the question is the right to control the manner of doing the work. Generally speaking, it may be stated that, if the employee is under the control of the employer, he is a servant or employee and not an independent contractor, but, if in the performance of the work he is not under the control of the employer, he is an independent contractor. However, it is not the actual exercise of the right by interfering with the work but the right to control which constitutes the test."

Furnishing workmen and appliances further complicates this question, but the test seems to be whose work is being done, who has the power to direct the particular manner of its doing, in the use of the appliances, and has the right to divert the appliances from one particular use to another. See 14 R. C. L. 73, sec. 10; 39 C. J. p. 1322, sec. 1524.

It is said in 1 Labatt on Master and Servant, sec. 53, that three distinct theories have been advanced to cover the situation resulting from the hiring of an instrumen-

tality which is to be used in the performance of certain work for the benefit of the hirer, and which is to be managed for the purpose of the work by a servant of the owner: First, the tranfer of the instrumentality is presumed to carry with it the right to control the servant as long as that possession continues. Second, a servant is deemed to have been hired by the contractee through the agency of the contractor, for the purpose of doing the stipulated work, and, although selected by and normally in the employment of the contractor, he becomes subject to the direction of the contractee from the time when the performance of the contract is commenced. Third, a servant sent to take charge of an instrumentality owned by his general employer while it is placed at the disposal of a third party for the performance of the given piece of work is presumed to remain the servant of the general employer, and some special circumstance, apart from the mere fact of the hiring of the instrumentality with the services of the general employee, must be put in evidence in order to overcome this presumption. The latter theory he suggests (section 54) to be applicable to the case where a horse-drawn vehicle is hired with a driver to a third party, and by analogy it would apply to the hiring out of an automobile with a chauffeur in the general employment of the owner. There is a valuable annotation beginning on page 1416 of 42 A. L. R. Also 20 A. L. R. 684, 36 A. L. R. 1153, 68 A. L. R. 1016.

The appellee contends that if it is held liable here, the farmer who employs a truckman to haul his tobacco to market could also be held; but he is mistaken, as in such a case the truckman would have a definite task to perform, an obligation to perform it, and a cause of action if wrongfully prevented from doing so.

The trial court's finding was that, under the contract between it and the owner of the truck, the driver of the truck was not the servant of the Gradisan Construction Company, but we regard this as error. That was equivalent to a finding that James Richards was an independent contractor, for which there is no support in this evidence.

The facts about the contract involved are in no dispute. The finding of the trial court upon undisputed facts is a finding of law, and is not conclusive on appeal. 4 C. J. 882; 2 R. C. L. p. 208, sec. 173.

284

The appellants are complaining of the instructions given on the second trial, but, as they are not in the record, we of course can express no opinion about them. A plat was used on the trial of these cases, the evidence is full of references to it, but it was not brought here, and its absence has added much to our difficulties in comprehending the evidence.

The court erred in overruling the plaintiff's motions for new trials.

The judgment in each case is reversed.

The whole court sitting.