**TURNER CONSTRUCTION COMPANY et al., etc., Appellants,**

**v.**

**D. B. E. GARRETT and Smith Brothers, Inc., Appellees.**

Court of Appeals of Kentucky.

Feb. 28, 1958.

Fielden Woodward, Woodward, Hobson & Fulton, Louisville, for appellants.

Davis M. Howerton, Jr., Stites, Wood, Helm & Peabody, Louisville, for appellee Smith Brothers, Inc.

J. Walter Clements, Louisville, for appellee D. B. E. Garrett.

CAMMACK, Judge.

One phase of this action, now presented on the merits, was before us in Turner Construction Co. v. Smith Brothers, Inc., Ky., 295 S.W.2d 569. We dismissed that appeal because it was from an interlocutory order. Subsequently we directed that the appellants could have that order reviewed in the present appeal. The appellants herein, Turner Construction Company and Struck Construction Company, Joint Adventurers doing business as Turner Construction Company-Struck Construction Company, are seeking reversal of a personal injury judgment in the amount of $16,674.40 in favor of the appellee, D. B. E. Garrett. They question also the propriety of a summary judgment in favor of Smith Brothers, Inc., a subcontractor, made a third party defendant by them.

The alleged errors of the trial court urged as grounds for reversal are: (1) Improper exclusion of testimony of Dr. Brockman in respect to the appellee's prior illnesses; and (2) refusal to give Instruction 3 which would have submitted the question of whether Smith Brothers, rather than the appellants, were the employers of the servant whose alleged negligent acts caused Garrett's injury.

Garrett claimed that he was permanently injured when dynamite was discharged in close proximity to him. At the time of the explosion both Garrett and the appellants were doing work on the grounds of the General Electric plant in Louisville. The appellants were engaged in the construction of the plant while Garrett was landscaping the arboretum. The explosion was set off purposely to remove a pile of asphalt which had hardened on the parking lot area.

The appellants did not ordinarily use explosives and had no employees trained in their use. They went to Smith Brothers, who were in the area doing work which sometimes required the use of explosives, and obtained the services of one of their employees, Carl Jenkins, for the blasting.

Jenkins, in the presence of the appellants' employee, Garrett Parks, placed dynamite charges in the pile of asphalt and set them off. D. B. E. Garrett was driving his car near the scene when the charges went off. The car was dented and dirtied by asphalt particles and Garrett was severely shaken up. The evidence is conflicting as to whether Garrett lost consciousness at that time, but it warrants the conclusion that he was in a state of shock and near hysteria. There is also conflict in the evidence as to whether any warning of the impending blast was given, but in any event the precautions prescribed by reasonable standards of safety were not observed.

The appellants concede that under the instructions the appellee was entitled to a recovery, but they contend that the verdict is excessive due to prejudicial error in failing to admit certain testimony of Dr. Brockman. The appellants were permitted to introduce the testimony of doctors who had examined the appellee after the accident. They were not permitted to question Dr. Brockman, the appellee's family doctor, in regard to his prior ailments.

When the trial court asked Dr. Brockman in chambers if there was any relationship whatsoever between the illnesses mentioned in his testimony and those which the appellee claimed to have resulted from the accident, the following discourse, as shown by an avowal, took place:

"The Witness: Yes, possibly. I can't answer that 'yes' or 'no' without some discussion.

"The Court: Well, just tell which they are * * *.

"The Witness: (Interrupting) In all fairness * * *.

"The Court: (Continuing) and why you say 'possibly.'

"The Witness: Well, sir, this left shoulder—that's the first thing—he has been complaining of it—he complained of it before the accident, and, of course,

he's still complaining of it, now, and he has since the accident. In all fairness to him, and all honesty on my part, there could be some bearing between the two. I don't think so; in other words, I don't think this lipoma had anything to do with his shoulder since the accident. I don't have any record of him complaining of his shoulder after removal of that tumor. He could have had some complaints he didn't tell me about. To my knowledge he had no complaints from removal of this tumor until the time of the accident. Another important point is I know Mr. Garrett is a very nervous type of individual. Whether that has any bearing on this case remains to be shown. Nervous individuals—I mentioned about the hysteria, the upset when I first saw him after the accident—that still doesn't mean he was injured or he wasn't. He was quite upset, and it would be natural and normal to be quite upset, having been near an explosion, and I think that remains to be proven whether he was injured as a result of that accident."

Concerning Dr. Brockman's testimony, taken as an avowal in chambers, the trial court said:

"It is the opinion of the court that as Dr. Brockman does not think that the previous condition of the shoulder has any relationship at all with the present complaint relative to this shoulder condition, * * * it would be highly improper for such evidence to come before the jury. * * * I am certainly not going to allow the jury to speculate when the doctor himself is of the opinion that the condition of the shoulder prior to the accident has no relationship towards the condition of the shoulder complained of after the accident. The Court is of the opinion that all that you can properly introduce relative to the matters heard in chambers is the condition of nervousness, * * * I am not going into the ques-

tion of speculation or conjecture, and the statement that it is possible and not that it is reasonably probable certainly does not warrant the court in permitting such evidence to be introduced."

We have examined the testimony of Dr. Brockman taken on avowal and conclude that he said it was not reasonably probable that the prior illnesses of the appellee could have contributed to his present physical condition. Our position is based upon the witness' own statement that in his opinion the prior ailments were not involved in Garrett's present condition. The trial court ruled correctly that any connection the jury might make between the prior illness, not including nervousness, and Garrett's present condition, if based on Dr. Brockman's testimony, would be speculative. Therefore, he did not abuse his discretion in excluding that testimony. See 20 Am.Jur., Evidence, sections 245, 246, 253.

■ The appellants insist it was error for the trial court to refuse to give their offered Instruction 3. It follows:

"If you believe from the evidence at the time and place referred to in the evidence, Carl Jenkins was an employee of Smith Brothers, Inc., and subject to their orders and control, then you shall find for the defendants."

The trial court had previously sustained a motion for a summary judgment in favor of Smith Brothers on the theory that Jenkins had been "loaned" to the appellants to perform a service exclusively for them, with the result that he was not an agent of Smith Brothers at the time Garrett was injured. See Turner Construction Co. v. Smith Brothers, Inc., Ky., 295 S.W.2d 569. That record has been consolidated with the case now on appeal. The summary judgment denied the Turner Construction Company the right to recover from Smith Brothers in the event that Turner Construction Company received an adverse judgment in Garrett's case,

notwithstanding an indemnity clause in the contract between the companies. The indemnity clause in controversy follows:

"(6) The Seller shall at all times indemnify and save harmless the Purchaser on account of any and all claims, damages, losses, litigation, expenses, counsel fees, and compensation arising out of injuries (including death) sustained by, or alleged to have been sustained by, the servants, employees, or agents of the Purchaser or the Seller, its subcontractors, or material men, and from injuries (including death) sustained by, or alleged to have been sustained by, the public, servants, employees, agents of the public, any or all persons on or near the work, or by any other person or property, real or personal, caused in whole or in part by the acts or omission of the Seller, any subcontractor, material man, or anyone directly or indirectly employed by them or any of them, while engaged in the performances of this contract."

While the basis of the summary judgment was that Jenkins was a "loaned servant" the issue was based on the indemnity clause between Turner Construction Company and Smith Brothers. The summary judgment did not and could not, under the circumstances, decree that if negligence occurred during the blasting that negligence was attributable to Turner Construction Company. The summary judgment merely concluded negatively the issue of whether Jenkins, at the time of the blast, was "engaged in the performance.of this contract" under which Smith Brothers had agreed to do certain work for Turner Construction Company. This ruling was correct because the indemnity clause did not cover all activities of Smith Brothers' employees while the contract was in effect. See Fosson v. Ashland Oil & Refining Company, Ky., 309 S.W.2d 176, for discussion of a comprehensive indemnity provision.

The appellants still contend that they were entitled to have submitted to the jury the issue of which company was Jenkins' employer at the time of the blast. They argue that Jenkins was not a "loaned servant" because Smith Brothers retained the right to fire him. Their argument is based upon the testimony of Mr. Smith, member of the firm of Smith Brothers, who said that if Jenkins had violated some regulation while he was on loan and the violation justified firing him, Smith Brothers would have had to fire him.

█ It is true that Smith Brothers retained the right to fire Jenkins from his employment with them, but they did not retain the right to fire him from his employment with the appellants. Prior to the blasting operations the appellants had approached Smith Brothers to secure the services of their employees because none of their own employees were trained in dynamiting work. Smith Brothers agreed for Jenkins to do the job when he had some free time. An employee of the appellants was with Jenkins when the blasting was done, directing him to the job and aiding him in its execution. It was the appellants' employee, not Smith Brothers, who was in charge of the dynamiting, and it was the appellants' employee who had the power to stop Jenkins in this particular employment, had Jenkins' work not met with approval. The fact that Jenkins could have been so grossly negligent in his special employment to justify Smith Brothers firing him from his general employment does not alter the fact that only the appellants had the power to remove Jenkins from the special employment. The test of whether a master's servant doing special service for a third party becomes the servant of the third party depends on who controls the servant while he performs special service. The right to discharge the servant immediately gives complete control. Bowen v. Gradison Const. Co., 236 Ky. 270, 32 S.W.2d 1014. We have examined the record and do not find evidence of probative value indicating that Smith Brothers retained control over Jenkins

while he was engaged in the special services for the appellants. It follows that the trial court was correct in refusing to give the appellants' tendered Instruction 3.

Judgment affirmed.