Mildred M. REARDON, Appellant,

v.

SOUTHERN TANK LINES, INC. (Formerly Gasoline Transport, Co., Inc.), et al., Appellees.

Beryl Mae BRATCHER, for hersef and as next friend of Elaine Bratcher, et al., Appellants,

v.

SOUTHERN TANK LINES, INC. (Formerly Gasoline Transport, Co., Inc.), et al., Appellees.

Court of Appeals of Kentucky.

March 3, 1961.

Rehearing Denied June 16, 1961.

Armer H. Mahan, of Davis & Mahan, Louisville, for appellants.

J. Walter Clements, James M. Graves, of Boehl Stopher Graves & Deindoerfer, Hubert T. Willis, Louisville, for appellees.

WADDILL, Commissioner.

The two appeals are prosecuted from separate judgments upholding the Workmen's Compensation Board's dismissal of appellants' applications for benefits as dependents of E. C. Bratcher and D. P. Reardon. These appeals have been consolidated because the only question they present is whether the board correctly determined that Bratcher and Reardon were independent contractors rather than employees of appellee, Southern Tank Lines, Inc., at the time of their deaths in 1957.

Appellee, Southern Tank Lines, Inc., solicits the hauling of bulk liquid commodities to be transported in tank-type vehicles. The actual hauling operations of appellee are generally conducted in the following manner. Whenever a shipper wants its commodities transported it notifies appellee, specifying the date and place the cargo is to be available, the quantity of the product to be hauled and the name and address of the consignee. When appellee's cargo dispatcher receives this information a waybill is prepared and the shipment is offered to one of the haulers whose name appears on the availability list maintained at the office of appellee. The hauler who is offered the shipment can either accept or refuse the load. If the load is accepted the hauler chooses the route he desires to take in accomplishing his mission and is otherwise free of appellee's supervision as to the details of the work involved. If the load is refused, it is then offered to the next hauler on the list, or it is hauled in equipment driven by appellee's regularly employed drivers.

On December 31, 1956, appellee leased from Bratcher and Reardon two tractor units which were to be operated under

certificates of convenience and necessity issued by governmental authority to appellee. Bratcher and Reardon, as lessors, agreed: To equip, maintain and service their tractors at their own expense; to pay the taxes on the equipment; to furnish the fuel, oil, and grease for the tractors; to keep the tractors in operating condition; to furnish at their expense competent and qualified drivers to operate the tractors; to furnish a list of their own employees to lessee to assure compliance with governmental regulations as to unemployment insurance, social security and workmen's compensation insurance; to pay unemployment and workmen's compensation insurance premiums covering their own employees; and to indemnify lessee against claims by lessor's employees for workmen's compensation or federal unemployment benefits. In consideration of these covenants lessee agreed to pay lessors a certain percentage of the revenue it received from the shipment of freight which was transported pursuant to their agreement.

The term of each lease was for a period of one year from the date of its execution but it could be terminated by either party after 30 days' written notice of such intention to the other party. Provision (d) of the leases provided that it "shall extend to and be binding upon the parties hereto, their heirs, executors, successors and assigns." And provision (4) (a) stated:

"'(a) Notwithstanding any other provision contained herein, it is agreed that the equipment leased hereunder . shall at all times during the term of this lease be operated under Lessee's direction and control and under Lessee's responsibility to the general public, as well as to the shippers, and that such leased equipment shall carry placards or other devices required by law evidencing that the lease equipment is being operated by the Lessee during the terms of this lease.'"

The foregoing provision was the subject of a jointly executed letter by the parties which reads in part as follows:

"'—— our joint interpretation upon our own contract and especially Sec. 4 (a) thereof and particularly the words 'direction and control' contained in said section, as not creating any relationship of master and servant or employer and employee, and to express our joint application of the words 'direction and control' as relating only and exclusively to the equipment proper and never to its driver, so that Gasoline Transport Co. may require the equipment to be in good and safe operating condition and that it meet the requirements and specifications of the various applicable laws and regulations but that Gasoline Transport Co. shall not have any control whatsoever over the drivers, the means, the methods, or the details used by you to perform this contract and no direction or control with respect to how the unit shall be handled, or driven, except, of course, it shall not be driven illegally.'"

D. P. Reardon was killed on January 2, 1957, and E. C. Bratcher on April 9, 1957. Each of them was driving a tractor-trailer unit furnished by appellee and was on his way to deliver a load of fuel in accordance with his agreement with appellee when he was fatally injured in a traffic accident.

In Locust Coal Company v. Bennett, Ky., 325 S.W.2d 322, we set forth the tests or factors traditionally used as criteria for determining whether the person involved is an employee or an independent contractor While no one of the factors is determinative of this question we have held that the right to control the details of the work is indicative of the employer-employee relationship. Sigmon Ikerd Co. v. Napier, Ky., 297 S.W. 2d 917. The absence of that factor is apparent in the instant cases. .

The proof in the instant cases is similar to that in Sigmon Ikerd v. Napier, Ky., 297 S.W.2d 917, 918, wherein we held that Napier was an independent contractor rather than an employee of the Sigmon Ikerd Company. In arriving at this conclusion it was said:

"As we view the case, Napier has failed to prove that he was an employee of the defendant. The proof shows that Napier entered into an agreement with defendant to furnish a truck to haul coal. While many details of their agreement are indefinite, Napier concedes that he was to be paid for the use of his truck on the tonnage basis; that he was to employ and pay the driver of his truck; and, that he was to pay all expenses incurred in the operation of his truck, which included such items as gasoline, oil, and repair.

"From the proven facts we are constrained to conclude that Napier was not an employee of the defendant, but was an independent contractor at the time he sustained his accident and injury. See, Johnson v. Byrne & Speed Coal Corp., 271 Ky. 216, 111 S.W.2d 671."

After weighing all the factors involved in the present cases, including Bratcher's and Reardon's privilege of accepting or rejecting any particular load of freight, their option to furnish drivers other than themselves to operate appellee's equipment and the further fact that they were paid a certain rate for a completed job, we conclude as a matter of law that Bratcher and Reardon were independent contractors as defined in Bowen v. Gradison Const. Co., 236 Ky. 270, 32 S.W.2d 1014, and recently approved in Brewer v. Millich, Ky., 276 S.W.2d 12, because they "were doing their own work in their own way."

The judgments are affirmed.