## Ruth Bros. v. Stambaugh's Adm'r et al.

(Decided Dec. 2, 1938.)

HOWES & WALKER and BRADLEY & BRADLEY for appellants.

WHEELER & WHEELER, C. F. PACE and LITTLETON & JARVIS for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

George Stambaugh was killed in a wreck between two trucks on July 18, 1936, and his administrator, William H. Stambaugh, appellee, filed suit against Poplar Ballast Company, Ruth Brothers, C. W. Duncan, Chester Hughes and Marcus Williams. Issue was joined and on a trial before a jury verdict was rendered against Ruth Brothers for $15,000, on which judgment was entered and appellants, Ruth Brothers, prosecute this appeal from that judgment.

George Stambaugh was riding in a truck which came into collision with a truck driven by Marcus Williams and there is no attempt to meet the proof introduced that Williams was negligent. Poplar Ballast Company pleaded that it was an independent contractor and a directed verdict was given in its behalf. Appellants, Ruth Brothers, interposed the defense of independent contractor and this issue was submitted to the jury.

Poplar Ballast Company had a contract with the State Highway Commission by which it agreed for a stipulated price per ton to furnish crushed limestone on the Mayo Trail between Paintsville and Louisa, and it sublet to Ruth Brothers a part of its contract so that Poplar Ballast Company was to furnish the stone and ship it to Paintsville to railroad cars and at this point Ruth Brothers were to receive, unload and spread the stone at a price of fifty cents per ton.

Appellants contend that the court erred in refusing to direct a verdict for them and insist that the evidence shows, as a matter of law, that they were independent contractors and therefore not liable to the plaintiff. Their defense was that after the Poplar Ballast Company sublet the delivery of the stone to them they sublet to defendant, Duncan, and that Marcus Williams, the driver of the truck, was Duncan's employee.

It becomes necessary therefore to review and state the substance of the evidence, introduced under this issue.

Bert W. Cornett, appellees' witness, testifies that he made the contract, subletting the Poplar Ballast con-

tract, with John Ruth; that by this contract Poplar Ballast Company was to deliver to Paintsville and Louisa, and Ruth Brothers were to receive the stone there and deliver it on the roads under directions of the highway engineer. He states that before Ruth would close the deal with him he wanted to see another party who was finishing up a job for him and would be loose with some trucks and that Ruth came back later and they closed the deal. This witness never saw either of the Ruths during the delivery of the stone and says that Duncan was in charge at both places (Paintsville and Louisa) and came into the office frequently and checked up on reports. He also states that Duncan informed him that he had the subcontract from Ruth Brothers and was in charge of the work. (No objection was made to this.)

Marcus Williams states that he was employed by Chester Hughes, Duncan's foreman, and paid by Hughes' check; that he did not know either of the Ruth Brothers and never saw them around. Elmer Lyon, assistant cashier of the Second National Bank, testified that on July 13, 1936, Chester Hughes deposited in this bank a check of Duncan's for approximately $900, and a check of Ruth Brothers for $150 on July 24, 1936. He does not testify to whom this check of Ruth Brothers was payable and, as a matter of fact, it was payable to Duncan. On cross-examination it is developed by this witness that a large number of checks were given by Chester Hughes on these deposits in payment for labor and other expenses in connection with the hauling of this stone. All of the above witnesses testified for the appellees on this issue.

For the appellants, John Ruth testifies that he contracted with the Poplar Ballast Company to receive the crushed stone on the railroad cars, unload it and deliver it in trucks on the road under directions of the highway engineer for fifty cents per ton; that he sublet this contract to Duncan by which he was to load the stone on Duncan's trucks and Duncan was to haul and deliver the stone from the conveyor at forty cents per ton; that he had no trucks on the job of hauling and no connection therewith whatsoever; that he did not know any employee engaged in hauling the stone except Chester Hughes, Duncan's foreman; that he paid no one for the work except the contract price to Duncan and had nothing whatsoever to do with it.

It developed on cross-examination of Ruth that the truck driven by Marcus Williams which caused the negligent injuries to Stambaugh from which he died, was purchased by Ruth Brothers about July 1st, some days before the accident, and appellees lay great stress on this fact as evidencing that appellants were the owners of the truck. It appears, however, that Ruth Brothers about the 4th day of July sold this truck to Duncan. Ruth states that this truck was purchased by him from the Rose Motor Company of Greenup and sold by him to Duncan a few days thereafter and that the Rose Motor Company executed a bill of sale to Duncan for same and that the truck was licensed in Duncan's name at the time of this accident. He sold the truck to Duncan for $700 and deducted this sum from amounts due Duncan for hauling this stone, of which sum $300 was deducted shortly after this accident and the remaining $400 sometime later. Ruth also testifies that there was a balance of $1,005 in his hands at the time of the trial due Duncan on this contract of hauling, but that Duncan, for some reason that does not appear, would not accept this as a final settlement.

Roy Roland, the only other witness who testifies on this issue, states that he and his truck were hired by Duncan on this job at $1.40 per hour and that Chester Hughes, Duncan's foreman, hired several other truck drivers and trucks engaged in this hauling. It appears, also, that Duncan had operated a steam shovel for Ruth Brothers a short while before the accident and that he also did contract hauling for them in Carter County about one month before this accident.

The above constitutes the substance of all the material testimony introduced on the issue as to whether or not Duncan was an independent contractor and it becomes necessary to consider the law applicable to this state of facts.

While we mention the testimony with reference to appellants having owned the truck involved in this accident, we do not consider it of any great importance because, even though actual ownership was in appellants, this would not necessarily impose liability on them if they had, as a matter of fact, turned it over to Duncan to use in the performance of this contract. All the more is this true when it appears that Ruth Brothers had sold the truck to Duncan and that it had been li-

censed in his name. There is no contradiction of this testimony.

In all cases where the defense of independent contractor is interposed and the defense is based on a written contract, the court construes the contract as a matter of law. In case of an oral contract, if there .s no material dispute in the testimony, whether the employee is an independent contractor presents a question for the court; but if there is a conflict in the evidence, or if different inferences may be drawn from the testimony concerning the oral contract, the matter is for the jury to determine.

In the present case there is no conflict in the testimony, as we see it, and the testimony of Ruth as to the oral contract by which he says that he sublet the contract to Duncan, is very definite and undenied and not disputed by any witness on this trial. The statement is made several times that Duncan was to haul and deliver the stone from the conveyor at forty cents per ton.

A great mass of law has been written on the subject of independent contractors and these cases have been reviewed many times and we will not do so again at length, but will consider the authority relied on mainly by appellee, namely, Bowen v. Gradison Construction Company, 236 Ky. 270, 32 S. W. (2d) 1014, and the several recent cases in this court of almost the exact type here involved.

In the Gradison Construction Company Case, the company hired from Richards his truck and driver by the hour and an examination of .the opinion in the case makes it apparent that the decision that Richards was not an independent contractor, is based almost entirely on the fact that Gradison Construction Company had control over the driver while performing this service. This is definitely indicated by the following language of that opinion [page 1016]:

> "We are not interested in whose servant he was ordinarily, but whose servant was he while on the job at work under this contract? Who was then his master? Suppose the foreman of the construction company had said to Owen Richards: 'Bring a load of sand first thing in the morning.' Would he have hesitated one moment about whether or not he had that to do? Suppose he had that night stated his contract fully to the first ten men he met and

asked each of them, 'Must I haul this sand?' Does any one for a moment doubt what the answer would have been? With the power of discharge in its hands the construction company held control of this truck and driver.''

This case on which appellees rely so strongly differentiates it from another case almost identical in facts with the present case, namely, the case of Berry et al. v. Irwin, 220 Ky. 708, 295 S. W. 1020, the court saying:

''The Gradison Construction Company is relying on the authorities below to sustain this judgment, but they do not do so, and we shall point out as briefly as we can the difference between those cases and this one that makes those authorities inapplicable. It places its chief reliance on the case of Berry et al. v. Irwin, 220 Ky. 708, 295 S. W. 1020. There Billiter & Wiley were engaged in the construction of a road from Elizabethtown to Bardstown. They had made with D. H. Smith, a contract to get out, crush, and prepare the stone, and with Berry & Kelly they had made a contract to get this stone at the crusher and deliver it to the points on the road, where it was to be put down, at so much per ton. While Berry & Kelly used trucks in that transportation, there was nothing said in the contract about the instrumentalities they should use, and so far as that is concerned they might have used wheelbarrows had they seen fit. Billiter & Wiley had the right to tell them when and where to deliver and dump the stone, and that was all they had.''

In the present case the evidence shows nothing more or less than that Ruth Brothers agreed to pay Duncan forty cents per ton to take 'the crushed stone from Ruth Brothers' conveyor at the depot and deliver it on the road. There is no intimation of any kind whatsoever in the evidence that Ruth Brothers ever exercised any control of any kind over this hauling or over any employee engaged therein. They did not even undertake to designate the points on the road at which this stone should be delivered, and had no right to do so. That was to be done, and was done, under the direction of the state highway engineer. As far as the evidence in this case goes, no one connected with Ruth Brothers ever saw a load of this stone after it left the conveyors and never attempted to give any order or direction of

any kind whatsoever to any employee as to the manner or method of hauling or even as to the place of dumping the stone on the road. All truck drivers engaged in this work were employed by Duncan or by Chester Hughes, his foreman, and all of these trucks and drivers were paid for by Duncan or Hughes. In short, the facts in this case bring it almost definitely within the category of the doctrine laid down in Berry et al. v. Irwin, supra.

Appellee contends strongly that Duncan did not have a contract for the entire job and cannot be classed as an independent contractor for this reason, his theory being that by this contract Duncan did not acquire the right to transport all of the crushed stone on this project; that no definite amount of hauling was specified in the contract. It is true that John Ruth in his testimony does not say specifically that he contracted with Duncan to haul all of the stone. He only says that Duncan was to haul and deliver the stone from the conveyor at forty cents per ton. However, it seems to us that his statement is capable of no other interpretation except that he sublet this contract. Having made such a contract with Duncan we do not believe that any court would permit him to terminate the contract after a portion of the stone had been hauled. Having made the contract he was bound by it unless he reserved the right to terminate it at any time. "The stone" meant and could mean nothing else than all the stone called for by the contract which the Poplar Ballast Company had with the Highway Commission and which had been sublet to Ruth Brothers.

Appellee cites 14 R. C. L. 74, in which the statement is made that the fact that a person is paid by the job is not conclusive that he is an independent contractor and that authority says, "Particularly is this so when there is no definite amount of work to be done," but it will be observed that the illustrations cited in support of this view rather indicate that the one claiming to be an independent contractor was doing his work under the control of the person sought to be held liable. No authority is cited to the effect that the failure of the subletting contract to specify a definite amount of work is sufficient in itself, to warrant the conclusion that the sublessee is not an independent contractor.

Even though we might say that no binding contract was entered into between Ruth and Duncan for the haul-

ing of all stone to be hauled on this road, that fact alone could not operate to prevent the court from determining that Duncan was an independent contractor, if, in fact, all other proven circumstances in the case showed beyond question that he was operating independently during such time as he actually did haul and without any supervision or control on the part of his employer.

The main question in all cases of this type is whether or not the one who is claimed to be an independent contractor has contracted to do the work according to his own methods and without being subject to the control of his employer except as to the result of his work. Cartmen, draymen and truckmen are generally recognized as independent contractors where they haul for a unit price with no supervision as to the manner or method of hauling. 14 R. C. L. 76; 65 L. R. A. 468; Burns v. Michigan Paint Co., 152 Mich. 613, 116 N. W. 182, 16 L. R. A., N. S., 816, and note.

One of the latest cases dealing with this question is Atlas Coal Company et al. v. Bryant, 263 Ky. 626, 93 S. W. (2d) 5, in which the Atlas Coal Company has entered into a contract with one Haag who owned and operated trucks of his own to haul its coal from its yards to customers at a stipulated price per ton. The company received orders for coal and turned them over to Haag for delivery, the company directing him as to the kind of coal to be delivered and the place to which it was to be delivered, the company loading the trucks from its bins. In that case the drivers on some occasions collected the price of the coal, where credit was doubtful, and this money was transmitted to the Atlas Coal Company through Haag.

Under these circumstances it was held that a directed verdict should have been given because Haag was an independent contractor and the court said [page 10]:

"Since appellant is shown to have had nothing whatever to do with the task of hauling its coal nor any voice in the selection of the instrumentalities or persons engaged in it nor did it do, suffer, or perform any act inconsistent therewith, we conclude that the proof undisputedly established the defense under consideration, and that the court erred in not sustaining the motion for a peremptory instruction."

Appellee insists that as this contract for crushed

stone was let by the Highway Commission to the **Poplar** Ballast Company, that company was liable to the Highway Commission for faithful performance of the work and when it sublet to Ruth Brothers they were also responsible to the Commission for full performance and that therefore Duncan could not have been an independent contractor. This question has been decided adversely to appellee's contention in the case of McLellan v. Brown, 275 Ky. 30, 120 S. W. (2d) 742, decided October 18, 1938, wherein a full discussion of this question is presented. We see no reason to depart from the principle therein announced.

In view of the foregoing conclusions, it is our opinion that the court should have given a directed verdict for appellant at the conclusion of all the testimony in the case. All other questions are reserved.

The judgment is therefore reversed with directions to grant appellants a new trial and for further proceedings consistent with this opinion.