## Irvin et al. v. Madden.

Dec. 13, 1939.

Kirk & Wells for appellants.

C. A. Lykins, John T. Diederich and John Stanley for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

In August, 1937, an automobile driven by Tom Madden and a truck driven by T. A. Jones came in collision as a result of which Madden suffered severe injuries. He brought this suit against T. A. Jones and the Nehi Bottling Company of Paintsville, a partnership composed of W. H. Irvin and others, to recover damages for his injuries alleging that the truck was owned by the Nehi Bottling Company and was being operated by T. A. Jones as agent, servant and employee of the company; that the collision and injuries resulting to him thereby were caused and brought about by the negligence of T. A. Jones in the operation of the truck which was being used at the time in hauling a load of beer for the company from Huntington, West Virginia, to the company's plant at Paintsville.

By separate answer the company traversed the allegations of the petition and affirmatively alleged in a separate paragraph that T. A. Jones was the owner of the truck and was not operating it as their agent, servant or employee but was an independent contract carrier and hauling beer for them as such. The affirmative averments of the answer were traversed by reply. Trial resulted in a verdict and judgment in favor of plaintiff

against all the defendants and the bottling company is appealing.

As grounds for reversal it is argued (1) that appellants were entitled to a peremptory instruction because the truck was owned and in possession of T. A. Jones who was an independent contractor and appellants were not liable for negligence upon his part; (2) that the evidence was not sufficient to uphold the verdict as against appellants. In the light of the evidence concerning the nature, character and probable duration of appellee's injuries and expenses he had incurred for treatment, argument that the verdict is excessive would be inconsistent and futile.

There is a sharp conflict in evidence bearing on the issue of negligence. The evidence for appellee and his witnesses clearly conduces to show that the collision resulted solely from the negligent operation of the truck in that it was being driven at an unsafe rate of speed and to the left of the center of the road as it was going. One of appellee's witnesses was sitting on the porch of her home near and within plain view of the highway. She testified that she saw the truck and automobile as they approached each other and came in collision. The evidence for appellant and his witnesses is to the effect that T. A. Jones was driving at a reasonable rate and to the right of the center of the road and that appellant came around the curve at a high rate of speed and to the left of the road as he was traveling. It will therefore be seen that notwithstanding the conflict there was ample evidence on which to base a conclusion that the accident was due to the negligence of appellant and to sustain a verdict so far as that issue was concerned.

With respect to the issues made by the affirmative allegations of appellants' answer the evidence shows that T. A. Jones bought the truck from a motor company on May 10, 1937, making a down payment and giving a number of notes for deferred payments. The bill of sale was made to him. On May 26, 1937, T. A. Jones by bill of sale transferred the truck to "Paintsville Nehi" for a recited consideration of $100 and other valuable consideration but the evidence shows that the word "Paintsville" has been stricken from the bill of sale and the words "Bottling Company" inserted after Nehi therein. These added words were inserted by W. H. Irvin but the evidence is not clear as to whether the

change was made before or after the instrument was recorded. A few days after this bill of sale was made, appellants took out in the name of the Nehi Bottling Company a public liability and property damage insurance policy on the truck and paid the premium. Jones had not received from the proper department at Frankfort a formal permit as a contract carrier but he did produce in evidence a receipt of a highway patrolman purporting to show that he had paid the fee for such permit. He had not executed any bond or received any distinguishing license place as provided and required by the statute. He paid no mileage tax as required of contract carriers and made no report as required by statute showing the mileage traveled by the truck. Jones made trips for the company both to Ohio and West Virginia and had been granted no interstate permit, however, he stated that he had talked with Federal authorities concerning such permit.

W. H. Irvin testified that appellants had no interest whatever in the truck but that it belonged to Jones; that he was not an agent, servant or employee of appellants but that he hauled bottled goods and empty bottles for them by contract and paid for all gas and oil used in the operation of the truck and for repairs made; that appellants paid him a fixed sum for trips to various points. He stated in effect that appellants had no control over the details of the work and that Jones was not subject to their orders with respect thereto and that their only interest was in the result of the work done. However, when asked whether the bottling company had any control over the details of the hauling, he answered, "Nothing more than to tell him where to go and give him his orders." T. A. Jones corroborated Mr. Irvin with respect to the ownership of the truck and the arrangements under which he did the hauling. He produced in evidence checks covering three of the deferred installments on the truck. These checks were on the account of his wife and bore her signature by him. He further stated that he had reimbursed appellants at least in part for the sum they had paid as premium for insurance on the truck but there are no checks or receipts evidencing such payment. He and a number of persons testified that he did contract hauling with the truck for a number of persons or firms other than appellants. Mr. Jones assigned no reason for transferring the truck to appellants. Mr. Irvin testified that he knew

nothing about the transfer until after it was made; and that he then asked Jones to take it out of "my name;" that he took out the insurance on the truck on the advice of an insurance agent and to avoid "just such a situation as this." Mr. Irvin's evidence concerning lack of knowledge of the transfer of the truck to appellants is not very persuasive or convincing in view of the fact that he corrected the name of the company in the bill of sale and the further fact that he was a business man and the company owned and operated a number of trucks and he must have known that any change in the record respecting the title or ownership of the truck would have to be made by appellants. Appellee and other witnesses testified that immediately after the accident Jones stated that he would likely lose his job because of the accident and made a written statement which would tend to indicate that appellants had some interest in the truck. There is evidence concerning the expense of operating a truck of this character which would indicate that Jones was being paid little if anything more than ordinary wages by appellants.

Appellants cite a number of domestic cases as supporting their contention that Jones was an independent contractor and not their servant or employee. The cases relied on indicate that even though ownership of the truck was actually in appellants, that fact alone would not necessarily impose liability on them. See Brady v. B. & B. Ice Company, 242 Ky. 138, 45 S. W. (2d) 1051; Ruth Brothers v. George Stambaugh's Adm'r et al., 275 Ky. 677, 122 S. W. (2d) 501. The former quoted with approval from 2 Blashfield's Cyclopedia of Automobile Law, p. 1320, Section 5, wherein it is said:

"Something more than ownership of a motor vehicle is required to establish agency, or the relation of master and servant, between the owner and the borrower or hirer negligently operating it."

None of the cases cited are directly in point and each case was determined by the application of governing principles of law to its particular facts. The manner in which Jones was paid for hauling, that is whether by hour, day, etc., or by the trip is likewise not determinative of the question as to whether he was an independent contractor or an employee of appellants. Knight, Knight & Clark v. McCoin, 255 Ky. 9, 72 S. W. 705. The question of ownership and the manner of pay-

ment were matters to be considered in connection with other evidence to determine the relationship between appellants and Jones. The question as to whether Jones was an independent contractor was submitted to the jury under an appropriate instruction, the correctness of which is not called in question. Under a doctrine too well recognized to require citation of authority, the credibility of witnesses and the weight to be given their evidence are matters exclusively within the province of a jury. A jury may accept the evidence of one set of witnesses to the exclusion of that of another or the evidence of one witness as against the evidence of a number of witnesses and may also judge and determine the weight as between the conflicting statements of a single witness.

Irvin and Jones testified positively that the truck belonged to the latter, yet as a matter of public record the title had been transferred to and remained in appellants with full knowledge of Irvin. Not only so but he took out insurance on it in the name of the company; and Jones failed to comply with practically every requirement of law respecting contract carriers. If in fact Jones was the owner of the truck and his relation to appellants was that of independent contractor, what was the necessity or the moving cause for such course of conduct upon the part of Jones and Irvin. The explanations attempted by Mr. Irvin were dubious and wanting in quality to produce conviction. Naturally these circumstances were taken into consideration by the jury in determining the credibility of the witnesses and the weight to be given their evidence. While there is much evidence to indicate that Jones was a contract carrier, there was so much evidence, circumstantial and direct, and inferences naturally arising therefrom to the contrary as would forbid the appellate court to interfere with the verdict.

What we have said concerning the first ground for reversal effectually disposes of the second ground and renders further consideration of that ground unnecessary.

Judgment affirmed.