Leo BEASLEY, Appellant,

v.

Clinton EVANS' ADMX. et al., Appellees.

Court of Appeals of Kentucky.

March 7, 1958.

196

Earle M. Nichols, Nichols & Nichols, Madisonville, for appellant.

Moore & Morrow, Franklin & Franklin, Madisonville, for appellees.

SIMS, Judge.

Clinton Evans was killed in an accident when the car driven by his cousin Leo Beasley, in which he was a guest, collided with a truck driven by George Slate. Evans' administratrix sued Leo and Slate jointly for $25,000 damages caused decedent's estate and for $642.44 for his funeral expenses. Leo and Slate did not sue each other. The jury returned a verdict against Leo for $15,000 and against Slate for $642.-44, and from the judgment entered thereon Leo has appealed against both the administratrix and Slate, but there is no cross-appeal by either of them.

Leo insists the trial judge erred in: 1. overruling his motion for a directed verdict; 2. instructing the jury; 3. admitting incompetent evidence. He further contends the verdict was the result of bias and prejudice.

To determine these questions, especially the first, it is necessary that we give a résumé of the evidence.

Leo Beasley was driving a 1954 model Ford car with his brother Raymond riding next to him and with Evans also on the front seat next to the right door. On the back seat was Dimple Burden Dockery, a 17 year old girl, a cousin of the three men on the front seat. Leo was 34, Raymond

36 and Evans 47 years of age. All of them lived in Illinois. The accident happened around 4:30 P. M., on a dry, clear day, on March 28, 1955, about a half mile east of White Plains, Kentucky, on U. S. Highway 62, which is paved with concrete and is 19 feet wide.

Leo was driving west in his right, or north, lane and coming toward him traveling east was Slate, a man 60 years of age, driving an empty 1½ ton Ford truck in his right, or south, lane. From the point of collision (near a little storehouse Slate owned located just off the north side of the highway) the road was straight for 1,000 feet east and 475 feet west to a curve. There was a slight dip in the highway east of the storehouse but it was not sufficient to prevent the upper half of an approaching car from being seen.

Leo testified he was driving around 50 or 55 miles per hour and saw the truck as it came around the curve, 475 feet away, and continued to watch it until the collision occurred. When Slate was 65 or 70 feet from his car, without any signal he pulled his truck at an angle from 45 to 90 degrees immediately in front of Leo's car. As Slate turned Leo applied his brakes as hard as he could and Evans exclaimed, "Watch it." Leo's tires and brakes were in good condition and the surface of the road was dry. He tried to turn his car to the left to avoid hitting the truck but the truck completely blocked the north lane, as well as two thirds of the south lane. It all happened so quickly he could not pull to the left of the truck. The right front of his car hit the truck just behind the right door where the cab and body join. The impact knocked the truck west with the left rear dual wheels stopping on the north side of the highway. The truck was about 18 feet long. The truck pulled the car north and the latter stopped facing northwest, angling across the highway. Leo's testimony was substantially corroborated by Raymond and Dimple.

Shelby Riggs, a state patrolman who arrived on the scene a few minutes after the accident, testified he measured the skid marks of the car and they were 33 feet to where Leo's car stopped, and there were 4 more feet after the impact. These marks began in the north lane and ended 6 inches to the left of the center line. The right front of the car scraped the right fender of the truck and went under the right front corner of the bed of the truck. Riggs testified Leo told him in the hospital the afternoon of the wreck that he was driving 60 miles an hour; while Leo testified he told Riggs he was going 50 or 55 miles an hour. The officer did not remember of Slate telling him at the scene of the accident that afternoon that Leo was traveling 75 miles an hour. The officer testified, "Almost all of it (the truck) was on the (north) shoulder of the road. * * * The back of the truck swung around after it was hit."

Slate testified he was driving his truck 30 or 35 miles an hour and slowed to 15 or 20 miles an hour when making the turn. When asked, "Where was the automobile of Leo Beasley when you first saw it?"

A. "A 100 or 125 yards up the road."

Q. "In your opinion, how fast was his car traveling?" A. "I would say 80 miles or more."

Q. "What did you do?" A. "I was trying to get out of the way, and this car, I hadn't much more than seen it when it hit."

Q. "You saw his car before it struck your truck?" A. "Just did."

When asked if there was anything to prevent him from seeing the approaching car, Slate answered, "It don't look like anything; just a swag, and I pulled down and looked both ways and had this hand out, and I didn't see no car when I started, and I pulled across." Q. "You think you traveled 40 feet in making your turn?" A. "Across the highway and up, I imagine it would be." At another place in his testimony, Slate said he traveled 50 or 60 feet in making the turn and Leo "had ⅔ or ¾

of the road to pass. * * * But it looked like something happened and he turned right into me."

■ There is a direct conflict in the testimony of Leo and of Slate. Therefore this was a case for the jury to determine whether the accident was caused by Leo's or by Slate's negligence, or whether their joint and concurrent negligence caused it. True, Slate's testimony is contradictory as in one place he says before making the turn he looked and saw no approaching car, while at another place he testified he saw Leo's car 100 or 125 yards away as he started turning his truck. It is for the jury to determine the weight to be given the testimony of a witness who makes conflicting or contradictory statements. Carl Const. Co. v. Bain, 235 Ky. 833, 32 S.W.2d 414; Irvin v. Madden, 281 Ky. 7, 134 S.W. 2d 942; Igo v. Smith, 282 Ky. 336, 138 S.W. 2d 497.

■ Leo complains of the second instruction because it placed upon him the duty to operate his car in a careful manner, to keep a lookout, to have his car under reasonable control, to operate it at a reasonable rate of speed, and in no event to exceed 60 miles per hour. He insists there was no evidence that he was not performing all of these duties; that his speed had nothing to do with the accident which would have occurred regardless of his rate of speed. Under the testimony of Slate a question was raised as to whether Leo was driving carefully, keeping a lookout and had his car under reasonable control. We said in Fentress v. Hardin's Adm'x., Ky., 273 S.W. 2d 575, and in Rucker v. Clark, Ky., 239 S.W.2d 80, it was reversible error to instruct on speed unless it could be regarded as the proximate cause of the accident or contributed thereto. However, under the testimony of Slate the speed of Leo caused or contributed to the accident and it was not error for the court to instruct on speed. See Hilsenrad v. Bowling, 292 Ky. 368, 166 S.W.2d 847, and Rutherford v. Smith, 284 Ky. 592, 145 S.W.2d 533, where we wrote

that when the evidence conflicts as to whether one person made a sharp or gradual turn to the left in the path of an approaching car, and the evidence conflicts as to the speed of the approaching car and whether the driver could have avoided the accident, the case should be submitted to the jury.

■ Archie Brothers, who arrived on the scene just after the accident, estimated the skid marks made by the car at 125 or 150 feet, and George Harvey estimated them at 80 or 90 feet. Leo's objection to the testimony of R. L. Jarvis, who placed these skid marks at 100 feet and of W. W. Putman, who placed them at 60 or 70 feet, should have been sustained, as they did not see these skid marks until a day after the accident. Appalachian Stave Co. v. Pickard, 260 Ky. 720, 86 S.W.2d 685.

■ We think that no unbiased mind can read this record without reaching the conclusion that Slate's negligence was at least equal to, if not greater than, that of Leo. When the jury returned a verdict against Leo, a resident of Illinois, for $15,-000 and against Slate (who for 26 years had been a resident of Hopkins County, where the accident happened and the case was tried,) for only $642.44, it is apparent the verdict was the result of bias and prejudice. The court properly instructed the jury might find for plaintiff against either or both of the defendants; if it found against both defendants, it might find different amounts against each or it might find against both defendants jointly in a single sum. 2 Stanley's Instructions to Juries, § 603, p. 318. This instruction does not mean that the jury may disregard the evidence and return a verdict twenty-five times larger against the defendant whose negligence was comparatively slight than the amount of the verdict returned against the other defendant whose negligence was the greater.

■ We practically repeat here what was written in Smith v. Webber, Ky., 282

S.W.2d 346, that it is a matter within the discretion of this court wheher it will direct a partial retrial or have the whole case retried. A partial retrial should be directed only when it is clear no injustice will result from so doing. Where the verdict is incongruous, as in this instance, "it is tainted with illegality since the jury disregarded the instructions as to damages and that fact casts a suspicion on the entire verdict. In such a case, a new trial should be ordered on all issues."

 Criticism is made of the instruction on contributory negligence. There is no evidence upon which the court could base an instruction of contributory negligence on the part of Evans, a guest in Leo's car, as it was not shown Leo had been driving recklessly or negligently before the accident or that Evans had made any complaint about the manner in which Leo had been driving. If the evidence is practically the same on another trial, the court will not instruct on contributory negligence.

The judgment is reversed for a new trial of the whole case in conformity with this opinion.