Creed SMITH et al., Appellants,

v.

N. C. W. GENNETT et al., Appellees.

Court of Appeals of Kentucky.

Nov. 25, 1964.

Rehearing Denied Feb. 12, 1965.

Cole & Cole, Barbourville, for appellants.

Luker & Luker, London, for appellees.

DAVIS, Commissioner.

The appellants were plaintiffs below in this damage suit arising from an automobile-truck accident. The lower court entered summary judgment absolving appellees from liability on the ground that the truck driver was not a servant of appellees (herein referred to as Gennett). This appeal presents the question whether the truck driver was a servant of Gennett.

Gennett operates its main lumber plant at Asheville, North Carolina, and has a lumber mill operation on Elk Creek in Clay County, Kentucky. The plant in Clay County processes logs into lumber; the processed lumber is shipped from the Clay County plant to such destinations as are designated by the main office in North Carolina. Gennett does not maintain any company-owned trucks or other means for shipping the lumber from the Clay County plant. The general practice, as explained by the manager of the Clay County plant, is that the head office advises the Clay County plant that a specific type and quantity of lumber is to be shipped, and further that a truck will be sent to the Clay County

plant for loading. Some shipments are made by rail.

Robert T. Killion, Jr. resides at Morristown, Tennessee, and is a truck operator. Killion had a truck driver employee named Carter, also a resident of Morristown. On the occasion of the accident involved in this case Carter was driving Killion's truck from Oneida, Tennessee, where he had delivered a load of lumber hauled from Gennett's Clay County plant. Carter stated that his destination was Manchester, Kentucky, from which place he intended to telephone to Killion to learn what directions Killion had for him as to further hauling duties.

Carter said that the lumber had been loaded onto the truck by Gennett's employees, and he had been instructed where to deliver it. Carter's salary was paid by Killion. Gennett compensated Killion for the hauling on the basis of "fifty cents a loaded mile."

Killion had no written contract with Gennett; he usually called Gennett's Asheville office to ascertain whether any hauling was available. He had been trucking lumber for Gennett, on this basis, for about eighteen months. There was no regular schedule. Other truckers were used by Gennett, and some of Gennett's shipments were made by railroad.

For the appellants it is pointed out that Killion had no certificate or permit from the Interstate Commerce Commission authorizing his handling of interstate shipments by motor carrier. Neither did Gennett possess any such authority. However, we can perceive no significance to this as it relates to the question before us.

The question at issue is whether Carter was a servant of Gennett at the time of the accident. Appellant reasons that Carter was a "loaned servant"—that he was loaned to Gennett by Killion. Reliance is had upon Bowen v. Gradison Const. Co., 236 Ky. 270, 32 S.W.2d 1014; Clendenin v. Colonial Supply Co., 267 Ky. 544, 102 S.W.2d 992; Tindall v. Perry, Ky., 283 S.W.2d 700; Sam Horne Motor & Imp. Co. v. Gregg, Ky., 279 S.W.2d 755; and Grasberger v. Liebert & Obert, 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201.

██ An examination of the foregoing authorities confirms the proposition that a servant may be loaned or hired by his master for some special purpose so as to become the servant of the party to whom he is loaned or hired for that particular service. Moreover, those cases confirm the principle that the basic test is who controls the servant in the particular employment. Further, it is recognized in the same authorities, and many others, that an independent contractor is not an employee so as to impose liability upon one for whom he contracts.

We shall not burden this opinion with detailed analysis of each of the cited cases. Examination of them reflects that they recognize that the right of control of the servant is one vitally important factor; another factor is whether the one employed is engaged in a distinct occupation or business; of significance is whether the parties believe they are creating the relationship of master and servant. An independent contractor is said to be one who is doing his own work in his own way.

██ In light of these elements, we conclude that Carter was not a servant of Gennett at the time of the accident. Clearly, Killion was engaged in a distinct occupation as a trucker. When Killion sent his truck to haul Gennett's lumber, Killion was doing his own work in his own way. Gennett had no control as to whom Killion would send nor as to the route the truck would follow. In short, we observe nothing in this relationship to distinguish it from the usual situation in which the transporta-

tion facilities of a trucker are employed to convey property.

■ In Ruth Bros. v. Stambaugh's Adm'r., 275 Ky. 677, 122 S.W.2d 501, it was said:

"Cartmen, draymen and truckmen are generally recognized as independent contractors where they haul for a unit price with no supervision as to the manner or method of hauling."

We consider that observation as sound and dispositive of the issue here. At bar we have none of the particular circumstances which induced a different conclusion in some of the cited cases.

The judgment is affirmed.