**Artie K. MYERS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 18, 1973.

As Modified on Rehearing Sept. 28, 1973.

Raymond Francis Connell, Paris, for appellant.

Ed Hancock, Atty. Gen., J. T. Frankenberger, Asst. Atty. Gen., Frankfort, Harris Rhodes, Commonwealth Atty., Stanford, for appellee.

GARDNER, Commissioner.

Artie K. Myers, appellant, was convicted of armed robbery and sentenced to life imprisonment. His principal ground for reversal surrounds an alleged tainted identification of appellant.

J. B. Strange, the proprietor of an antique shop near Nicholasville, Kentucky, was in his store at 11:30 a. m. when two men entered under the pretense of prospecting for antiques. One of the men shoved a pistol in Strange's back, saying "This is a stick up," while the other took money from the cash register. As the episode was ending, a man with his wife and daughter entered the store. The robbers nonchalantly walked away. Strange informed the three customers that he had just been robbed and requested that they get the license number of a car parked about 90 feet from the store. He explained that he was slightly afflicted with cataracts and couldn't discern the figures on the plate. One of the customers wrote down the license number which was relayed to the police.

It was learned that the car belonged to Margin Willis, and he was arrested early the next morning. Subsequently Willis told the police that he was in the subject car in front of the antique shop while appellant and Raymond Jones were inside committing the robbery. He insisted, however, that he was totally unaware of appellant's and Jones' plan to commit a crime or that the crime had been committed until after appellant and Jones re-entered the car and told Willis of the happenings. Appellant was arrested about five months after the robbery and placed in the county jail. Strange heard of the arrest and went to the jail because "he wanted to identify him." At Strange's request the jailer brought appellant into the corridor where Strange could see him.

Willis, the driver of the car, testified in behalf of the Commonwealth and directly implicated appellant and Jones as the perpetrators of the crime. Appellant contends that Willis was an accomplice, that his testimony was uncorroborated by other evidence tending to connect appellant with the commission of the crime, and that pursuant to RCr 9.62 he should have been acquitted. Appellant correctly argues that there was an absence of corroborating testimony identifying appellant as one of the assailants if Strange's testimony had been excluded. Whether Willis was an accomplice or not was left to the jury's determination under proper instructions. It is recalled that Willis denied any knowledge of the crime or complicity with appellant and Jones. See Mouser v. Commonwealth, Ky., 491 S.W.2d 821 (1973). Whether the jury decided that Willis was not an accomplice, or that he was an accomplice but that the evidence of Strange sufficiently corroborated the testimony of Willis, cannot be discerned from the verdict. So there remains the question of whether the identification evidence was so tainted as to make it inadmissible.

It was on Strange's own volition that he went to the jail to see the suspect. He did not select from a lineup but was confronted with a person he knew to be the suspect. The refined issue is whether the in-court identification of appellant by Strange was accomplished by his independent recollection of his observations made at the

time of the crime or whether from the confrontation at the jail. The testimony of Strange on this subject becomes all-important, and we find it in the following excerpts:

DIRECT EXAMINATION:

"Q4 On the occasion when he was in your store, did you have an opportunity to see him well?

A Yes sir.

Q5 And from having seen him there, are you able to say that this is the same man that was in your store and took the money?

A Yes sir."

\* \* \* \* \* \*

CROSS–EXAMINATION:

Q34 So when you came in here today you were sure that he was the fellow that robbed you because you seen him in the jail in February, is that right?

A As well as in the store."

DIRECT EXAMINATION:

"Q1 Mr. Strange can you identify the defendant today solely from having seen him in your store on September 15, 1971?

A Yes sir I believe I can."

\* \* \* \* \* \*

DIRECT EXAMINATION:

"Q35 And are you identifying him solely from seeing him in store?

A Yes sir."

\* \* \* \* \* \*

CROSS EXAMINATION:

"Q9 I believe you told me that seeing him at the jail as well as seeing him in the store is what helped you identify him today, is that correct?

A Yes sir. The two together, yes sir."

It is readily noted that Strange's testimony as to whether the in-court identification was made from observations in the store or from both that and the jail confrontation is contradictory. His last testimony was that the identification stemmed from both. All three answers were in response to leading questions.

■ The confrontation at the jail comes under the category of a showup, i. e., the presentation of the suspect alone to the victim. This type of identification should be accepted with caution. In Sobel, Eye-Witness Identification in Criminal Cases (1966), § 18, page 36, the author states: "A showup is subject to all the dangers 'plus' of a lineup." Appellant relies heavily on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), to convince us that the identification testimony should be excluded. *Wade* involved a lineup wherein the accused, with others, was exhibited to witnesses for identification. The accused was not represented by counsel at the lineup. The court held that the accused was entitled to counsel at the lineup. The conviction was set aside but the court pointed out that upon another trial the government should have an opportunity to establish by "clear and convincing evidence that the in-court identification was based upon observations of the suspect other than the lineup identification." (Since the lineup procedure itself was not introduced into evidence by the government, the court pointed out that "a *per se* rule of exclusion of courtroom identification would be unjustified.") While testimony of the jail confrontation was presented to the jury, the evil inherent in disclosing to the jury in a lineup case that the witness had picked out the accused from among several other persons is not a factor in the present case. It would seem, therefore, that as in *Wade* the prosecution was entitled to show that Strange recognized appellant in the courtroom from an independent source, the robbery episode.

**280**

If Strange's ability to identify appellant was the result of the jail meeting, his testimony on the subject should have been excluded. See People v. Rahming, 26 N.Y.2d 411, 311 N.Y.S.2d 292, 259 N.E.2d 727 (1970). On the other hand, if Strange's in-court identification was based upon his independent recollection of appellant on the occasion of the crime, his testimony was not necessarily made inadmissible because of the improper jail confrontation. See Sobel, Eye-Witness Identification in Criminal Cases (1966), § 7, page 18. The trial court conducted a hearing and the record is before us. Many circumstances, including the opportunity of observation at the crime, should be considered. In the instant case Strange saw appellant face to face. Under the highly intense experience it was possible that Strange would receive impressions of appellant's appearance that would be more definite and longer lasting than a casual meeting of him on the street.

Appellant insists that Strange's testimony as to whether his in-court identification was from independent recollection or from the jail confrontation was self-contradictory and therefore of no probative value. While there is authority for this view and there are even cases holding that a later statement amounts to a withdrawal of a former inconsistent statement, see Duvall v. Commonwealth, 198 Ky. 609, 249 S.W. 768 (1923), and Commonwealth v. Clark, 311 Ky. 710, 225 S.W.2d 118 (1949), we believe the sounder and more widely accepted view is that contradictory statements of a witness in his direct examination and cross-examination ordinarily go to his credibility as a witness. Beasley v. Evans' Admx., Ky., 311 S.W.2d 195 (1958); Igo v. Smith, 282 Ky. 336, 138 S.W.2d 497 (1940); Irvin v. Madden, 281 Ky. 7, 134 S.W.2d 942 (1939); Carl Const. Co. v. Bain, 235 Ky. 833, 32 S.W.2d 414 (1930). In the present case Strange made positive affirmative answers that he identified Myers as one of his assailants by the impressions he received at the store. It

was for the court to determine if the in-court identification was tainted. The court decided it was not. It was for the jury then to decide on the basis of all the evidence if Strange adequately identified Myers as one of his assailants.

The court properly instructed the jury to make a determination as to whether Willis was an accomplice and if so whether there was corroborative evidence tending to connect the accused with the commission of the crime. The testimony of Strange as to his identification of appellant, therefore, was properly admitted and it was for the jury to decide whether the identification was reliable.

We find no merit in appellant's other assignments of error.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.