Patricia D. MASSIE, Administratrix of the Estate of Ronald Gregory Massie, Deceased, Appellants,

v.

Charles PERSSON; Whitney & Steinmetz Consulting Engineers; Fain & Johnston, Inc.; Jack B. Clotfelter and William Johnson d/b/a Clotfelter & Johnson, Architects; State Electric Inspection Bureau; D.W. McCauley and James W. Little d/b/a Suburban Electric Company, Appellees.

Court of Appeals of Kentucky.

March 6, 1987.

Discretionary Review Denied by Supreme Court June 2, 1987.

John H. Burrus, Landrum, Shouse & Patterson, Lexington, John J. Brady, Paris, for appellants.

Andrea K. Donoho, Lexington, for appellees.

Philip T. Durand, Ambrose, Wilson & Grimm, Knoxville, Tenn., for Charles Persson.

W.T. Adkins, Ronald L. Green, Boehl, Stopher, Graves & Deindoerfer, Lexington, for Whitney & Steinmetz.

Peter J. Sewell, Segal and Shanks, Louisville, for Fain & Johnston.

James D. Ishmael, Jr., Wyatt, Tarrant & Combs, Lexington, for Clotfelter & Johnson.

John M. Swinford, Cynthiana, for D.W. McCauley.

Henry A. Triplett, Bennett, Bowman, Triplett & Vittitow, Louisville, for State Elec. Insp. Bureau & D.W. McCauley.

Before COOPER, WILHOIT and DUNN, JJ.

DUNN, Judge.

Appellant administratrix's decedent, Ronald Gregory Massie, a student athlete at Bourbon County Junior High School, was electrocuted on April 17, 1980, while using a whirlpool bath at the school. On February 4, 1981, Patricia D. Massie was appointed administratrix of his estate. She appeals from the trial court's summary judgment entered in favor of the five construction defendant appellees in her wrongful death action for Ronald's estate filed originally in Fayette Circuit Court[1] on March 9, 1981. She also appeals that part of the amended final judgment dismissing pursuant to a jury's verdict her claim against defendant appellee football coach, Charles Persson. We affirm in part and reverse and remand in part.

In the mid–1960's, the Bourbon County Board of Education, by contract with its architects, developed plans for the construction of the Bourbon County Junior High School building. The construction effort was begun during 1967 and 1968 and was completed in late 1968 or early 1969. To the extent relevant here, the following defendant appellees participated in the construction of the building:

(a) Jack B. Clotfelter and Bill Johnson d/b/a Clotfelter and Johnson Architects;

(b) Fain and Johnston, Inc., General Contractors;

(c) Whitney & Steinmetz Consulting Engineers;

(d) Suburban Electric Company, the electrical sub-contractor;

(e) State Electric Inspection Bureau, electrical inspection firm and David W. McCauley, electrical inspector, its employee.

A certificate of approval from the State Electric Inspection Bureau was executed

---

1. After summary judgment was entered on July 1, 1983, in favor of the construction defendants appellees the venue in the Fayette Circuit Court was no longer proper under KRS 452.450, KRS 452.460, KRS 452.480, and KRS 452.490. Upon a renewal motion by various other defendants to dismiss for lack of venue the Fayette Circuit Court, while recognizing the impropriety of venue then existing under the statutes recited, determined pursuant to Kentucky Constitution § 109 that the action should not be dismissed, but transferred it on September 13, 1983, to the then court of proper venue, the Bourbon Circuit Court, from which this appeal is prosecuted.

on December 28, 1968, certifying that all 357 receptacles in the completed school building had been inspected and approved and were certified to have been installed in accordance with the requirements of the 1965 National Electrical Code in effect at that time. McCauley, State Electric Inspection Bureau's employee, was responsible for testing and approving the receptacles.

In 1972, the Bourbon County Board of Education acquired a stainless steel whirlpool bath for the school. It was a portable unit consisting of a steel tub upon which was mounted a control panel and an impeller or agitator unit. It would accommodate only one person, and was constructed and wired internally in such a manner as to provide grounding continuity as a single unit from the point of its three-pronged grounded plug and throughout its various motors and switches. In its original configuration, the unit was approved for safe use by the Underwriters Laboratory and carried the UL label.

Defendant appellee, Charles Persson, became football coach of the school in June, 1979. He decided to modify the existing whirlpool to accommodate more than one athlete at a time. He constructed a concrete block pool supplied with water from an adjacent shower and drained it into the shower area. He removed the agitator from the metal whirlpool by unbolting the control panel from the stainless steel tub and placed the agitator in the new pool. It was powered by an electric cord from it to the unbolted control panel which sat next to the new block pool and was attached to the original steel tub with athletic tape. The control panel was connected by another cord to its source of power, an electric receptacle nearby in another room that was one of the 357 receptacles installed when the building was built. The control panel cord and its male plug were also held together by athletic tape.

After the project was completed Coach Persson asked the school's industrial arts teacher's opinion as to its workability before it became operational in December, 1979. The teacher without benefit of tools, testing equipment or expertise, said it would work apparently implying that it would work safely.

On April 17, 1980, after a school baseball game Patricia's decedent, Ronald Massie, with two other boys were directed to use the newly structured whirlpool. As the first boy to use it was getting out, another boy entered, followed by Ronald. After the two were in the pool for a while they, in distress, cried for help. A nearby coach disconnected the whirlpool and he and another coach removed the two from it. The one boy recovered, but tragically Ronald died from electrocution.

There were various deficiencies in the wiring of the enlarged whirlpool bath at the time of the accident. The electric receptacle into which the control panel was plugged was improperly grounded in violation of the 1965 National Electric Code in effect when the building was built. Coach Persson did not attach or install a "ground fault interrupter" to the errant receptacle as provided for installations of this type in the 1975 National Electric Code in effect at the time he modified the whirlpool. There were at least three faulty wiring conditions existing in the whirlpool equipment components.

The above named five construction defendants appellees moved the trial court for summary judgment based primarily on KRS 413.135(1) which in pertinent part provides:

No action to recover damages, whether based upon contract or sounding in tort, resulting from or arising out of any deficiency in the design, planning, supervision, inspection or construction of any improvement to real property, or for any injury to property, either real or personal, arising out of such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, inspection or construction of any such improvement after the expiration of five (5) years following the substantial completion of such improvement.

Patricia in opposition to the summary judgment motions argued that the five year statute of limitations provision of the

statute was not available to the construction appellees because it is unconstitutional. She was joined in this position in the trial court by other defendants not parties to this appeal, Bourbon County Board of Education and its members. The trial court relying on *Carney v. Moody*, Ky., 646 S.W.2d 40 (1982), which upheld the statute's constitutionality, disagreed and on July 1, 1983, entered summary judgment in favor of the named construction defendants appellees. Patricia also maintained *Carney* did not apply to wrongful death actions.

The trial court, however, did not have the benefit of our Supreme Court's decision in *Wallace v. Tabler*, Ky., 704 S.W.2d 179 (1986), which held that KRS 413.135 violated Kentucky Constitution § 59, subd. 5, proscribing local and special legislation regulating limitation of civil causes, in that there was no rational justification for conferring special privileges and immunity upon architects, engineers and builders at the time the statute was enacted. In view of this holding of the statute's unconstitutionality, the trial court obviously was in error in granting summary judgment.

However, each of the construction defendants appellees dismissed by the summary judgment directly or indirectly raises the issue of Patricia waiving in a two-fold way her right to appeal the issue of the statute's unconstitutionality: 1) She did not attack in the trial court on the question of it being violative of the proscriptions in Kentucky Constitution § 59, subd. 5, the ground upon which our Supreme Court in *Tabler* based its conclusion of unconstitutionality; and, 2) she failed to notify the attorney general of her constitutional attack on the statute before judgment as required by KRS 418.075 and CR 24.03. We agree there was a waiver in both instances.

■ CR 76.12(4)(c)(iv) in providing that an appellate brief's contents must contain at the beginning of each argument a reference to the record showing whether the issue was preserved for review and in what manner emphasizes the importance of the firmly established rule that the trial court

should first be given the opportunity to rule on questions before they are available for appellate review. It is only to avert a manifest injustice that this court will entertain an argument not presented to the trial court. *Pittsburg and Midway Coal Mining Co. v. Rushing*, Ky., 456 S.W.2d 816 (1969). In accord *see Akers v. Floyd County Fiscal Court*, Ky., 556 S.W.2d 146 (1977); *Carr v. Cincinnati Bell, Inc.*, Ky. App., 651 S.W.2d 126 (1983); *Kaplon v. Chase*, Ky.App., 690 S.W.2d 761 (1985).

■ Patricia attempts to establish preservation of the issue by pointing in her reply brief to the trial record to establish that she had argued before the trial court that *Carney, supra*, did not apply to her case and if applied would be an unconstitutional abrogation of her cause of action, one for wrongful death. In so arguing in the trial court, however, she primarily was referring to Kentucky Constitution § 241, while *Carney* held the statute to be non-violative of §§ 14 and 54. She made no trial court reference to § 59 or its federal counterpart, the 14th Amendment to the U.S. Constitution. She clearly did not give the trial court the opportunity to gauge the statute's constitutionality in the light of § 59. Even though the five construction defendant appellees made no reference to § 59 in their initiative motions pursuing summary judgment, nothing prevented Patricia from raising § 59's equal protection provision. In fact, she was under an obligation to do so both as to the trial court and to the parties. Her failure to fulfill this obligation is a waiver of her right to depend on the section's protection when it is raised for the first time on appeal.

As to the second issue of waiver, KRS 418.075 in pertinent part provides:

> In any proceeding which involves the validity of a statute, the attorney general of the state shall, *before judgment is entered*, be served with a copy of the petition and shall be entitled to be heard. (Emphasis added.)

And additionally in this regard CR 24.03 emphasizes the statute's importance by providing in pertinent part:

... When the constitutionality of an act of the General Assembly affecting the public interest is drawn in question in any action to which the state ... is not a party, the movant shall serve notice of the motion upon the Attorney-General.

■ Patricia steadfastly argues compliance with the statute and the rule maintaining that on February 22, 1985, she notified the attorney general by certified mail that she was challenging the constitutionality of the statute and that he declined intervention. She ignores the facts that the interlocutory summary judgment dismissing the five construction defendants appellees was entered July 1, 1983; the final judgment affecting all the remaining parties was entered on August 16, 1984; and, that her notice to the attorney general was filed on February 22, 1985, long after the entry of both judgments. The fact that the attorney general declined intervention adds nothing to Patricia's argument. Any reason we would assign for his declination would be a speculative one. It is clear, however, that the absence of such notice before entry of judgment hardly gives the attorney general an opportunity to procedurally effectively intervene, especially, as here where the notice was not only well beyond the 10–day period within which the trial court could do anything about the judgment, but was well beyond September 13, 1984, the date upon which she filed her notice of appeal. Compliance with these provisions is a mandatory requirement of the party challenging the statute. *Blake v. Woodford Bk. & Tr. Co.,* Ky.App., 555 S.W.2d 589 (1977); *McNeal v. Armour and Co.,* Ky.App., 660 S.W.2d 957 (1983). Her failure in this regard is an additional waiver of her right to challenge the statute's constitutionality on appeal.

Despite her protestations there was no waiver, she nevertheless argues that the averting of a "manifest injustice" exception to waiver provided for in *Pittsburg & Midway Coal Mining Co. v. Rushing, supra,* should be applied. We can discern no manifest injustice resulting from our holding that Patricia waived her right to challenge

the statute on appeal. She fails to advise why we should apply this exception. Obviously, she is disturbed by the result of the waiver. This could have been avoided by the simple expedient of presenting a § 59 argument to the trial court and notifying the attorney general in a timely way.

■ We agree with her additional argument that an unconstitutional statute is void *ab invito* and, therefore, can't be given life by waiver. In so doing, however, we need to point out that this waiver is not of the statute's unconstitutionality but is a waiver of the procedural right to benefit from that fact on appeal. This is also probably why we can find no Kentucky civil cases determining in particularity a manifest injustice resulting from a waiver. *See Carr v. Cincinnati-Bell, Inc., supra,* for dual waiver as here.

■ In concluding that Patricia waived her challenge to the statute, we are constrained to add that under the facts of this case she could not have recovered from the five construction defendants appellees anyway. Ignoring any reasons the five might otherwise have, we conclude there was no proof that their negligence, if any, was a substantial causative factor in Ronald's electrocution. Their liability is bottomed on the allegation that they were negligent because of the code violation of the improper grounding of the electric receptacle installed at the time the building was constructed and to which the modified block whirlpool bath was connected for a power source.

Even though there was expert testimony that the improperly grounded construction receptacle and other defects in the whirlpool equipment were substantial factors in Ronald's electrocution, such a conclusion defies logic in the face of the unassailed opinion by all the same experts that if a ground fault interrupter had been installed as provided for in the 1975 National Electric Code, no electrocution or injury would have occurred in spite of the improper grounding or other equipment defects.[2]

2. The parties are already very familiar with the

expert testimony describing the rather involved

The absence of the ground fault interrupter is the last and only substantial factor in causing Ronald's electrocution. All the other defects may have been substantial factors but being antecedent to it were not causative factors. The ground fault interrupter's absence was the sole causative factor. *Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980).

In view of this determination, we also determine that Patricia should prevail in her argument that the trial court should have directed a verdict in her favor against Coach Persson for his negligent failure to install a ground fault interrupter as required by the 1975 National Electric Code. The facts of this case more than adequately fulfill the requirement that reasonable minds can come to but one conclusion in this regard and that a verdict should have been directed. *Lee v. Tucker*, Ky., 365 S.W.2d 849 (1963); *Montgomery Ward Life Insurance Co. v. Robbins*, Ky.App., 572 S.W.2d 163 (1978).

It also renders moot and is dispositive of Patricia's complaint about the jury instructions concerning Coach Persson in the absence of a directed verdict concerning his negligence based on violation of the 1975 National Electric Code in the adaption, construction, alteration and installation of the whirlpool given against Persson. If an instruction concerning the coach's liability had been necessary, however, the trial court should have advised the jury that the violation of the code terms was negligence per se and it should have then framed the instructions to determine whether or not his negligence was a substantial factor in causing Ronald's death. We reject coach Persson's argument to the contrary on both the directed verdict issue and on the jury instructions issue.

Although they are moot in view of all of the above, we shall comment briefly on the other issues the construction defendants appellees advance to support the summary judgments in their favor other than the constitutional question of the statute. We

agree that, in addition to the substantial factor issue discussed above, their various other reasons standing alone would justify the granting of the summary judgment in their behalfs. A summary judgment should not be disturbed merely because it is based on incorrect grounds. *Tresslar Co., Inc. v. Fritts*, Ky.App., 665 S.W.2d 314 (1984).

■ We first address the other reason advanced by the State Electric Inspection Bureau and D.W. McCauley, its employee, that Patricia's wrongful death cause of action filed against them on February 25, 1982, in her amended complaint was barred by the one year statute of limitation provided by KRS 413.140(1)(a) for personal injury. Clearly they were not joined till well beyond the date of death on April 18, 1980. It's true that KRS 413.180(1) provides for a one year statute of limitations from the date of the appointment of a decedent's personal representative if death occurred prior to the lapse of one year from the date of injury. However, it is not applicable in a case, such as here, where the action is one for a death concurring simultaneously with the injury. *See Totten v. Loventhal*, Ky., 373 S.W.2d 421 (1963). Since the amended complaint does not relate back to the original complaint and no other fact is present to prevent application of KRS 413.140(1)(a), the Bureau's and McCauley's reliance on the one year statute is well taken, and the summary judgment in their favor is otherwise proper.

■ We next address the other reasons advanced by the remaining construction defendants appellees in support of the summary judgment in their favors. Obviously the negligence possibly linking them to the electrocution was the Inspection Bureau's failure, if any, through its employee, McCauley, to detect upon inspection the improper grounding of the receptacle in question. The Bureau, as the hired inspector for the work, functioned as an independent contractor through its employee, McCauley, and had the sole responsibility

technical explanation of the function of this device and the reasons why it would have prevented injury in spite of all other defects. No

useful purpose would be served by repeating it here.

for determining under KRS 227.450(4) whether or not the electric installations in question complied with the code in effect. The other defendants appellees, Clotfelter and Johnson, the architects, Whitney & Steinmetz, the consulting engineers, and Fain & Johnston, Inc., the electrical subcontractor, all had a right to rely on the Bureau's, albeit McCauley's, inspection and report. Consequently, any liability they might normally have under the doctrine of *respondeat superior* is nullified by the independent contractor exception to it to the effect that one who employs an independent contractor is not liable for physical harm caused to another by the omission of the independent contractor or its employee. *Smith v. Gennett*, Ky., 385 S.W.2d 957 (1964); *Restatement, Torts 2d*, § 409. The performance of work that is inherently dangerous to the public exception to this rule is only applicable to the independent contractor's performance while the inherently dangerous work is in progress. *Kentucky Stone Company v. Gaddie*, Ky., 396 S.W.2d 337 (1965). It is evident that installation of electric wiring as here is not an inherently dangerous activity within that exception as is for instance a blasting project. The summary judgment in favor of these three construction defendants appellees is likewise otherwise proper.

The judgment of the Bourbon Circuit Court with respect to the appellee Charles Persson is REVERSED and REMANDED to the trial court for proceedings to determine damages against him. In all other respects the judgment is AFFIRMED.

All concur.